### ROCKWELL v CRESTWOOD SCHOOL DISTRICT BOARD OF EDUCATION

Docket No. 56618. Argued March 4, 1975 (Calendar No. 1).—Decided April 4, 1975. Rehearing denied 394 Mich —.

After a prolonged labor dispute between the Crestwood School District Board of Education and the Crestwood Education Association, the teachers' union, during which charges of unfair labor practices were filed by the union with the Employment Relations Commission (MERC), the teachers did not report for work when the school year commenced on September 3, 1974. George W. Rockwell and Violet P. Rockwell brought this action against the board and the union to compel resumption of school operations. The original complaint was dismissed by stipulation and the action proceeded on the cross-complaint of the board. Injunctive orders were issued and classes resumed, but in December the teachers again did not report for work. The school board adopted a resolution requiring the teachers to return to work or submit a letter of resignation by December 27, and further providing that the employment of teachers who failed to comply would be terminated at the end of that day. By resolution of the board on December 30, the teachers who had not returned were deemed to have terminated their employment; substitute teachers were hired, and the schools were reopened. The union filed an amended charge of unfair labor practices with the MERC. The Wayne Circuit Court, George E. Bowles and Thomas Roumell, JJ. (Joseph G. Rashid, J., dissenting), found that the failure of the school board to proceed in accordance with the teachers' tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.,* by having a hearing before the teachers were discharged required their reinstatement. The Court of

References for Points in Headnotes

[1–16, 18–20, 27, 28, 33] 48 Am Jur 2d, Labor and Labor Relations §§ 1191–1197.
[17] 2 Am Jur 2d, Administrative Law §§ 192, 650–652.
[21, 22] 73 Am Jur 2d, Statutes §§ 187–190.
[23–26] 73 Am Jur 2d, Statutes §§ 392–407.
[29–31] 68 Am Jur 2d, Schools §§ 152, 153, 169.
[32] 42 Am Jur 2d, Injunctions § 35.

Appeals, V. J. Brennan, P. J., and Bashara and M. J. Kelly, JJ., affirmed (Docket No. 22735). The Board of Education appeals. *Held:*

1. The public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* was intended by the Legislature to be the governing law for public employee labor relations, and to the extent that it conflicts with the teachers' tenure act, the PERA governs.

2. A teacher, including a teacher on continuing tenure, who strikes in violation of the public employment relations act may be disciplined without a prior hearing under § 6 of that act.

3. The teachers did not cease to be employees by striking; their employment could only be terminated in accordance with the procedures set forth in § 6 of the PERA, but the action of the school board discharging teachers for striking in violation of the provisions of the PERA prior to the hiring of the replacements was not violative of that act.

4. If the MERC should determine that the employing school district committed an unfair labor practice, MERC may, despite the illegality of the teachers' strike, order reinstatement.

5. The hearings on the discharge of each teacher required by § 6 of the PERA may now proceed or, if the parties agree, be deferred until determination by the MERC of the unfair labor practice charges.

6. Even if it is determined in the hearings under § 6 of the PERA that particular teachers have violated the provisions of the act by striking, if the MERC orders reinstatement because it determines that reinstatement will best effectuate the policies of the act and that determination is sustained on review, the teachers shall be reinstated.

7. The MERC is authorized to consider and decide the union's request that it petition the circuit court for appropriate temporary relief, rather than to deny it as a matter of policy.

Williams, J. (T. M. Kavanagh and Swainson, JJ., concurring), dissented on the grounds that the PERA does not contain a provision for discharge of employees that conflicts with and repeals the discharge provisions of the teachers' tenure act, but sets up a procedure for determining whether an employee violated the provisions of the PERA after discharge or discipline proceedings under a body of rules outside the PERA, in this case in the teachers' tenure act. Consequently, the circuit court and Court of Appeals were correct, and should be affirmed, except that portion of the Court of Appeals' opinion which required compulsory arbitration.

57 Mich App 636, 226 NW2d 596 (1975) reversed.

OPINION OF THE COURT

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—TENURE—STRIKES—
   PUBLIC EMPLOYMENT RELATIONS ACT—HEARING.

   A teacher, including a teacher on continuing tenure, who strikes
   in violation of the public employment relations act may be
   disciplined without a prior hearing (MCLA 423.201 *et seq.*).

2. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—STRIKES
   —DISCIPLINE—HEARING.

   In providing that an employee's request for a hearing to deter-
   mine whether he violated the public employment relations act
   by striking be filed within ten days *after* compensation has
   ceased or other discipline has been imposed, the Legislature
   manifested an intention that an officer or body may impose
   discipline without a prior hearing (MCLA 423.201 *et seq.*).

3. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—DISCI-
   PLINE—NOTICE—HEARING—PUBLIC EMPLOYMENT RELATIONS
   ACT.

   To the extent that there is a conflict because the teachers' tenure
   act provides that discipline may be imposed only after charges,
   notice, hearing and determination, while the public employ-
   ment relations act contemplates imposition of discipline on a
   public employee who strikes before a determination of whether
   the act has been violated and provides for a hearing only on
   request of the employee after the imposition of discipline, the
   public employment relations act governs (MCLA 38.71 *et seq.;*
   423.201 *et seq.*).

4. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—LABOR
   RELATIONS.

   The teachers' tenure act was not intended, either in contempla-
   tion or design, to cover labor disputes between school boards
   and their employees (MCLA 38.71 *et seq.*).

5. LABOR RELATIONS—UNFAIR LABOR PRACTICES—SCHOOLS AND
   SCHOOL DISTRICTS—STATE TENURE COMMISSION.

   The State Tenure Commission has no authority to entertain an
   unfair labor practice charge against a school board; its jurisdic-
   tion and administrative expertise is limited to questions tradi-
   tionally arising under the teachers' tenure act (MCLA 38.71 *et
   seq.*).

6. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—JURISDIC-
   TION—UNFAIR LABOR PRACTICES—PUBLIC EMPLOYMENT RELA-
   TIONS ACT.

   The Employment Relations Commission alone has jurisdiction
   and administrative expertise to entertain and reconcile compet-
   ing allegations of unfair labor practices and misconduct under
   the public employment relations act (MCLA 38.71 *et seq.,*
   423.201 *et seq.).*

7. LABOR RELATIONS—PUBLIC EMPLOYEES—DISCIPLINE—DUE PROCESS.

   Due process does not require a *prior* hearing in every case where
   the government seeks to deprive a person of a property right,
   but a hearing appropriate to the nature of the case; the
   necessity of a pre-disciplinary hearing for a public employee
   must be determined by balancing the interests of the govern-
   ment and of the employee.

8. LABOR RELATIONS—PUBLIC EMPLOYEES—STRIKES—ESSENTIAL SER-
   VICES.

   A pre-disciplinary hearing is not necessary before the discharge
   of a public employee for striking; when public employees strike,
   the public employer must, like a private employer, be able to
   hire substitute employees so that the public business is not
   interrupted, and in order to hire competent replacements it
   may be necessary for the public employer to offer permanent
   employment and thus displace strikers; where essential services
   have been suspended, the hiring of replacements often cannot
   await time-consuming adjudicatory processes.

9. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—STRIKES—PUBLIC EM-
   PLOYMENT RELATIONS ACT.

   Teachers in a public school did not cease to be employees by
   striking; their employment could only be terminated in accord-
   ance with the procedures set forth in the public employment
   relations act (MCLA 423.206).

10. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—STRIKES
    —PROTECTED ACTIVITIES.

    The public employment relations act prohibits strikes in public
    employment and such strikes, therefore, are not protected
    under the act as lawful concerted activity for the purpose of
    collective negotiation or bargaining or other mutual aid and
    protection (MCLA 423.209).

11. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—STRIKES—PUBLIC EM-
    PLOYMENT RELATIONS ACT.

    The action of a school board in discharging teachers for striking

in violation of the public employment relations act prior to the hiring of replacements was not violative of that act (MCLA 423.201 *et seq.*).

12. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—STRIKES—EMPLOYMENT RELATIONS COMMISSION—UNFAIR LABOR PRACTICES.

The Employment Relations Commission may, despite the illegality of a teachers' strike, order their reinstatement if it should determine that the employing school district committed an unfair labor practice.

13. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—EMPLOYEES—REINSTATEMENT—CLEAN HANDS.

The doctrine of "clean hands" is not applicable in a proceeding in which the Employment Relations Commission, upon finding an unfair labor practice by an employer, may order reinstatement of employees who have engaged in an illegal strike to effectuate the policies of the labor mediation act (MCLA 423.1 *et seq.*).

14. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—UNFAIR LABOR PRACTICES—MISCONDUCT.

The Employment Relations Commission should balance the competing equities to reach a result best effectuating the goals of the labor mediation act if it finds that an unfair labor practice or other misconduct was committed by both sides (MCLA 423.1 *et seq.*).

15. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—HEARING—STRIKING.

A hearing under the public employment relations act, which provides that a person shall be entitled to a determination whether he violated the provisions of the act, is of limited inquiry and its sole purpose is to determine whether the employer correctly identified the particular employee as a violator of the act's prohibition against striking; the hearing is not an appropriate forum for the employee to assert in defense the employer's violation of the act, which is the exclusive province of the Employment Relations Commission to resolve upon the filing of an unfair labor practice charge (MCLA 423.206).

16. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—PUBLIC EMPLOYMENT RELATIONS ACT.

The Employment Relations Commission may not properly adopt an arbitrary policy of refusing to consider exercising, without regard to the circumstances, power conferred on it by the public employment relations act (MCLA 423.201 *et seq.*).

17. Administrative Law—Discretion—Abuse of Discretion.

An administrative agency empowered to exercise discretion abuses its discretion and errs as a matter of law when it absolutely refuses in every and any instance to exercise its discretion.

18. Labor Relations—Collective Bargaining—Compulsory Arbitration.

The Legislature has made no provision for the resolution of an impasse in either private or public collective bargaining (except in the case of police and fire departments), and the courts are without power to order the parties to submit their dispute to compulsory arbitration.

### Dissenting Opinion.

T. M. Kavanagh, Swainson, and Williams, JJ.

19. Labor Relations—Public Employment Relations Act—Discharge Procedures—Teachers' Tenure Act—Repeal by Implication.

*The public employment relations act does not affirmatively provide for a discharge procedure; on the contrary, there is a provision that refers outside of the act to a separate discharge procedure clearly indicating that there is none in the act and, as a consequence, it is neither legally nor logically appropriate to say that there is a discharge provision in the act that conflicts with, and hence repeals by implication, the discharge provisions of the teachers' tenure act (MCLA 38.71 et seq., 423.201 et seq.).*

20. Labor Relations—Public Employment Relations Act—Discharge Provision—Teachers' Tenure Act—Repeal by Implication.

*There is no discharge provision in the public employment relations act that conflicts with, and hence repeals by implication, the traditional rights of notice and hearing prior to discharge which are at the heart of the teachers' tenure act (MCLA 38.71 et seq., 423.201 et seq.).*

21. Statutes—Construction—Teachers' Tenure Act—Public Employment Relations Act—In Pari Materia.

*The teachers' tenure act and the public employment relations act are statutes in pari materia, and it is the duty of the courts to harmonize them if they can (MCLA 38.71 et seq., 423.201 et seq.).*

22. STATUTES—TEACHERS' TENURE ACT—PUBLIC EMPLOYMENT RELA-
    TIONS ACT.

*Insofar as the teachers' tenure act and the public employment
relations act cannot be reconciled and one act is in conflict with
the other, the public employment relations act as the latter
legislation will be deemed to supersede the tenure act pro tanto
(MCLA 38.71 et seq., 423.201 et seq.).*

23. STATUTES—CONSTRUCTION—REPEAL BY IMPLICATION.

*Repeals by implication are not favored, and it is only when the
two measures in view are so incompatible that both or all
cannot fully stand that the latter act operates to the extent of
repugnancy as a repeal of the first, or, if the two acts are not in
express terms repugnant, yet if the latter covers the whole
subject of the first, and contains new provisions showing that it
was intended as a substitute, it will operate as a repeal.*

24. STATUTES—REPEAL BY IMPLICATION.

*A "repugnancy" pronounced enough as to work a repeal by
implication must be clear and unavoidable; if the allegedly
conflicting statutes can be reconciled and a purpose found to be
served by each then there is no conflict.*

25. STATUTES—CONSTRUCTION—TEACHERS' TENURE ACT—DISCHARGE
    PROCEEDING—REPEAL BY IMPLICATION.

*It must be presumed that if the Legislature should decide to
repeal what it had so specifically granted in the teachers'
tenure act, due process in any discharge proceeding, especially
prior notice and hearing, it would not do so in an offhand
manner but by specific repeal or repeal by implication clear
beyond peradventure (MCLA 38.71 et seq., 423.201 et seq.).*

26. STATUTES—PUBLIC EMPLOYMENT RELATIONS ACT—TEACHERS' TEN-
    URE ACT—DISCHARGE PROCEDURE.

*The public employment relations act provides no specific repeal of
the discharge procedure in the teachers' tenure act and does
not repeal by implication the tenure act's discharge procedure
(MCLA 38.71 et seq., 423.201 et seq.).*

27. SCHOOLS AND SCHOOL DISTRICTS—STRIKES—TEACHERS—NOTICE—
    HEARING—TEACHERS' TENURE ACT.

*A board of education erred in discharging striking teachers
summarily, without prior notice and hearing, and without
reference to the applicable provisions of the teachers' tenure
act (MCLA 38.71 et seq.).*

28. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—STRIKES.

*Teachers did not cease to be employees of a school district by striking.*

29. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHER—DISCHARGE.

*The discharge of a probationary teacher, in the absence of specific legislation or contractual provision on point, is permissible only where it is neither unreasonable nor arbitrary nor beyond the scope of the school board's authority.*

30. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHERS—NOTICE—HEARING.

*In the absence of specific legislation on point, probationary teachers have a right to notice and a hearing prior to discharge; the hearing, if requested promptly, would only be concerned with the issues of whether the employment termination was arbitrary and unreasonable, or whether it was action outside the scope of the board's authority.*

31. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHERS—TENURED TEACHERS.

*A board of education erred in discharging both its probationary and tenured teachers without prior notice and hearings.*

32. INJUNCTION—DISCRETION—CLEAN HANDS.

*A circuit court acted within its discretion in issuing an injunction at the instance of a party who had violated a previous injunction where both sides had violated the terms of prior orders.*

33. LABOR RELATIONS—COMPULSORY ARBITRATION—TEACHERS—SCHOOL BOARD.

*A* sua sponte *order requiring compulsory arbitration in a labor dispute between teachers who withheld their services and a school board was not a proper exercise of judicial discretion.*

*Royal G. Targan* and *Howard Homeier,* for defendant and cross-plaintiff Crestwood School District Board of Education.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Daniel J. Hoekenga),* for defendants and cross-defendants Crestwood Education Association and others.

Amicus Curiae: *Clark, Hardy, Lewis & Fine, P. C.* (by *Dennis R. Pollard),* for Crestwood Civic Action Group.

*Fieger, Golden & Cousens,* for the Michigan Federation of Teachers, AFL-CIO.

LEVIN, J. The issue is whether school teachers who strike may be discharged without a prior hearing.

Resolution requires construction of the public employment relations act (the PERA)[1] in relation to the teachers' tenure act[2] and consideration of the teachers' claim that the PERA is violative of the Due Process Clause unless construed to require a prior hearing.

Section 6 of the PERA provides that public employees who, in concerted action with others, in support of efforts to obtain a change in compensation or other conditions of employment, fail to render services shall be deemed on strike. If the employee is disciplined by his employer for striking, he is entitled, on request, to a determination whether he violated the provisions of the act. The request is to be made "within 10 days *after* regular compensation of such employee has ceased or other discipline has been imposed". (Emphasis added.) If the employee is found to have violated the act, he may seek review by the circuit court.[3]

---

[1] MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[2] MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*

[3] "Notwithstanding the provisions of any other law, any person holding such a position who, by concerted action with others, and without the lawful approval of his superior, wilfully absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his duties for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions

In contrast, the teachers' tenure act requires a hearing *before* discharge. That act provides that a teacher on continuing tenure may be discharged or demoted "only for reasonable and just cause, and only *after* such charges, notice, hearing and determination thereof".[4] (Emphasis supplied.)

---

of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. In the event of such request the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, in accordance with the law and regulations appropriate to a proceeding to remove the public employee. The proceedings shall be undertaken without unnecessary delay. The decision of the proceeding shall be made within 10 days. If the employee involved is held to have violated this law and his employment terminated or other discipline imposed, he shall have the right of review to the circuit court having jurisdiction of the parties, within 30 days from such decision, for determination whether such decision is supported by competent, material and substantial evidence on the whole record." MCLA 423.206; MSA 17.455(6).

[4] MCLA 38.101; MSA 15.2001.

The Union also relies on § 569 of the School Code of 1955 providing:

"Any board after a teacher has been employed at least 2 consecutive years by the board may enter into a continuing contract with such teacher if the teacher holds a permanent or life certificate. A continuing contract is a contract which shall remain in full force and effect, as provided in the rules and regulations of the board, until the teacher resigns, elects to retire, is retired, or is dismissed for reasonable and just cause after a fair hearing." MCLA 340.569; MSA 15.3569. The foregoing language, with minor style variations, was added by 1943 PA 96 to a compilation of school laws which preceded the adoption of the School Code of 1955.

The last clause of this 1943 enactment, "dismissed for reasonable and just cause after a fair hearing", parallels Art IV, § 1 of the earlier enacted teachers' tenure act (1937 PA [Ex .Sess] 4) which provides that a teacher on continuing tenure may be discharged or demoted "only for reasonable and just cause, and * * * hearing * * * ". MCLA 38.101; MSA 15.2001.

The teachers' tenure act provides that the teacher shall be provided with written charges and, at the option of the teacher, for a hearing on these charges "not less than 30 nor more than 45 days after the filing of such charges". MCLA 38.102; MSA 15.2002. Although the charging board may suspend the accused teacher from "active performance" pending resolution of the charge, it may not withhold pay or otherwise sever the employment relationship before the hearing. MCLA 38.103; MSA 15.2003. A tenured teacher may appeal "any decision" of the board and be provided a hearing before the State

The circuit court found that the failure of the school board to proceed in accordance with the teachers' tenure act required reinstatement of the teachers who were discharged. The Court of Appeals affirmed.[5]

We conclude that a teacher, including a teacher on continuing tenure, who strikes in violation of the PERA may be disciplined without a prior hearing, and we reverse the circuit court and the Court of Appeals.

I

The Crestwood Education Association (the union) and the Board of Education of the School District of Crestwood (the school board) have been involved in a prolonged labor dispute. There has been no collective bargaining agreement since August, 1973.

When the school year commenced on September 3, 1974, the teachers, members of the union, did not report for work. This action was brought against the union and the school board on September 30, 1974, by the plaintiffs as homeowners, taxpayers and parents. By subsequent stipulation, the plaintiffs were dismissed and the litigation has continued on the cross-complaint of the school board.

Injunctive orders were issued in October and classes resumed. In December the teachers again did not report for work and classes were suspended. Contempt proceedings followed. Thereafter the school board adopted a resolution requiring the teachers either to report for work or to submit a letter of resignation by December 27, 1974,

Tenure Commission. MCLA 38.121; MSA 15.2021. Either party may seek judicial review of the commission's decision.

[5] 57 Mich App 636, 226 NW2d 596 (1975).

failing which their employment would be terminated. Thirty-eight teachers reported for work, one submitted a letter of resignation and the remaining 184 were, by school board resolution of December 30, 1974, deemed to have terminated their employment.

The school board hired substitute teachers and attempted to operate the schools.

The union had theretofore filed unfair labor practice charges with the Michigan Employment Relations Commission (MERC). The union then filed an amended charge complaining that the school board had not bargained in good faith and was attempting to destroy and interfere with the union. The teachers sought individual § 6 hearings on January 6, 1975. On January 10th the circuit court set aside the school board's resolution of December 30, 1974 and directed reinstatement of the teachers and the resumption of classes. The Court of Appeals affirmed. The teachers returned to work.

II

The PERA defines "strike",[6] prohibits strikes by public employees,[7] and interdicts any public employer from authorizing a strike.[8]

[6] "As used in this act: (a) 'strike' means the concerted failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or coercing a change in the conditions, or compensation, or the rights, privileges or obligations of employment." MCLA 423.201; MSA 17.455(1).

[7] "No person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike." MCLA 423.202; MSA 17.455(2).

[8] "No person exercising any authority, supervision or direction

Section 6 of the PERA empowers the officer or body generally having disciplinary authority over an employee to terminate the employment of or impose other discipline on an employee who strikes in violation of the PERA. In providing that an employee's request for a hearing to determine whether he did violate the PERA be filed within ten days *after* regular compensation has ceased or other discipline has been imposed, the Legislature manifested an intention that the officer or body may impose discipline without a prior hearing.

Section 6 begins with the words "[n]otwithstanding the provisions of any other law".

The Legislature, recognizing the diversity of legislation concerning public employees, provided in § 6 a specific, unitary procedure for the discipline of public employees who strike superseding the diverse procedures applicable to different public employees where the basis for discipline is a ground other than striking.

Section 6 further provides that the proceeding for the determination whether the public employee violated the provisions of the PERA shall be "appropriate" to a proceeding for the removal of the employee (fn 3), and thus, in the case of a tenured teacher, consonant with the tenor of the procedures spelled out in the teachers' tenure act. But to the extent there is conflict—and manifestly there is conflict as the teachers' tenure act provides that discipline may be imposed only after charges, notice, hearing and determination, while the PERA contemplates imposition of discipline

---

over any public employee shall have the power to authorize, approve or consent to a strike by public employees, and such person shall not authorize, approve or consent to such strike, nor shall any such person discharge or cause any public employee to be discharged or separated from his or her employment because of participation in the submission of a grievance in accordance with the provisions of section 7." MCLA 423.203; MSA 17.455(3).

before a determination of whether the act has been violated and provides for a hearing only on request of the employee after the imposition of discipline—the PERA is to govern "[n]otwithstanding the provisions of any other law".

In enacting the PERA, the Legislature did not, apart from the "[n]otwithstanding the provisions of any other law" clause of § 6, specifically provide that the PERA supersedes or replaces existing laws which arguably also govern public employee labor relations. The union contends that the quoted clause modifies only the first sentence of § 6.

This Court has consistently construed the PERA as the dominant law regulating public employee labor relations. In *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), we held that residency and retirement benefits are mandatory subjects of collective bargaining under the PERA, although provisions of a city's ordinance and charter, promulgated under the home-rule act,[9] would otherwise govern. Earlier, in *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96; 204 NW2d 218 (1973), this Court "harmonized" the constitutional authority of the Regents to supervise the university[10] and the authority of the Legislature to provide for the resolution of public employee disputes,[11] holding that interns and residents in the University of Michigan Hospital were entitled to engage in collective bargaining. In *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363, 374; 184 NW2d 201 (1971), this Court held that the original authority and duty of

[9] Const 1963, art 7, § 22; MCLA 117.1 *et seq.;* MSA 5.2071 *et seq.*
[10] Const 1963, art 8, § 5.
[11] Const 1963, art 4, § 48.

the Wayne County Civil Service Commission "was diminished *pro tanto"* by the PERA "to the extent of free administration of the latter".

The analysis is the same whether we label this reconciliation repeal by expression or by implication, *pro tanto* diminishing or harmonizing. The supremacy of the provisions of the PERA is predicated on the Constitution (Const 1963, art 4, § 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations.

The teachers' tenure act was not intended, either in contemplation or design, to cover labor disputes between school boards and their employees. The 1937 Legislature in enacting the teachers' tenure act could not have anticipated collective bargaining or meant to provide for the resolution of labor relations disputes in public employment. This Court's observation in *Wayne County Civil Service Commission, supra,* is pertinent: "In [no] instance could collective bargaining by public employees have been in the minds of the people, or of the [1937] legislators. The thought of strikes by public employees was unheard of. The right of collective bargaining, applicable at the time to private employment, was then in comparative infancy and portended no suggestion that it eventually might enter the realm of *public* employment." (Emphasis by the Court.)

The State Tenure Commission has no authority to entertain an unfair labor practice charge against a school board. Its jurisdiction and administrative expertise is limited to questions traditionally arising under the teachers' tenure act.

MERC alone has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the PERA.

There is no provision in the teachers' tenure act analogous to § 16(h) of the PERA (see Part VI, *infra)* providing for temporary relief by a circuit court pending consideration of an unfair labor practice charge. The circuit court's jurisdiction under the teachers' tenure act does not arise until appeal from a decision of the State Tenure Commission.

All teachers do not have rights of continuing tenure. Yet both tenured and non-tenured teachers are in a single public employee bargaining unit and have the same rights and obligations under Michigan's labor relations statutes.[12]

A construction of the statutes providing uniform treatment of all public employee labor relations questions is more likely to effect a sound and expeditious resolution of labor disputes. Requiring hearings under both the teachers' tenure act and the Michigan labor relations statutes, with review of the former by the circuit court and of the latter by the Court of Appeals, could result in competing claims and conflicting adjudications with untoward and costly delay.

Public employees may be disciplined under § 6 of the PERA only for engaging in *concerted* strike action,[13] while most disciplinary actions subject to the jurisdiction of the State Tenure Commission concern individual teachers. It should therefore be a rare case where the line separating disputes subject to the jurisdiction of the State Tenure Commission from those subject to the jurisdiction of the MERC will be unclear.

---

[12] *Paw Paw Board of Education v Paw Paw Education Association,* 1973 MERC 668; *Summerfield School Dist v Summerfield Education Association,* 1969 MERC 439.

[13] The present definition of strike as "concerted" activity represents a change from the Hutchinson Act under which a *single* employee, acting alone, could strike. *See* Howlett, *Michigan's New Public Employment Relations Act,* 45 Mich St B J 12, 14 (April, 1966).

The Crestwood teachers have asserted that they justifiably withheld their services because they had not been able to negotiate a new labor contract since August, 1973. No claim is or could be made that the discharges were occasioned by any cause other than the labor dispute.

Excluding from the jurisdiction of the State Tenure Commission discharges for concerted strike action will not impede the goals sought to be achieved by enactment of the teachers' tenure act. These goals, as set forth in *Rehberg v Ecorse School Dist No 11,* 330 Mich 541, 545; 48 NW2d 142 (1951), quoting cases from foreign jurisdictions, are to "maintain an adequate and competent teaching staff, free from political and personal arbitrary interference"; to promote "good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders"; and "to protect and improve State education by retaining in their positions teachers who are qualified and capable and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause".[14]

This construction of the two acts will not enable MERC to circumvent, at the request of school boards, the protection provided tenured teachers by the teachers' tenure act. If the school board claims that a teacher was discharged for striking, the appeal is to the circuit court, not to MERC. If the school board claims that the teacher was dis-

---

[14] Apart from the field of labor relations, the right of tenured teachers to a hearing has not been thought to require a prior hearing in every case. The State Tenure Commission has held, and the Court of Appeals affirmed, that the notice and hearing provisions in the teachers' tenure act do not apply "in cases of reduction of personnel due to economic reasons." *Steeby v School Dist of Highland Park,* 56 Mich App 395, 396; 224 NW2d 97 (1974).

charged for a reason other than striking, MERC's jurisdiction is invoked only if the teacher claims he was discharged for activity protected under the PERA and the teacher himself files an unfair labor practice charge with the MERC; such a charge would not preclude the teacher from also defending against the discharge at a teachers' tenure act hearing on the ground that it was not supported by reasonable and just cause.

## III

Whether a teacher's employment can be terminated, consistent with the Due Process Clause, without a hearing need not be decided. The PERA provides for a hearing.

The claim that the Due Process Clause requires a *prior* hearing in every case of deprivation of a property right has been rejected by the United States Supreme Court.[15]

When the government seeks to deprive a person of a property right—and we accept, *arguendo,* that a teacher's statutory rights under the teacher's tenure act constitute property—due process requires a "hearing appropriate to the nature of the case." *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950). "The formality and procedural requisites for the hearing can vary, depending upon the

---

[15] *See, e.g., Arnett v Kennedy,* 416 US 134; 94 S Ct 1633; 40 L Ed 2d 15 (1974); *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974); *North American Cold Storage Co v Chicago,* 211 US 306; 29 S Ct 101; 53 L Ed 195 (1908); *Central Union Trust Co v Garvan,* 254 US 554; 41 S Ct 214; 65 L Ed 403 (1921); *Corn Exchange Bank v Coler,* 280 US 218; 50 S Ct 94; 74 L Ed 378 (1930); *Phillips v Commissioner,* 283 US 589; 51 S Ct 608; 75 L Ed 1289 (1931); *Bowles v Willingham,* 321 US 503; 64 S Ct 641; 88 L Ed 892 (1944); *Fahey v Mallonee,* 332 US 245; 67 S Ct 1552; 91 L Ed 2030 (1947); *Ewing v Mytinger & Casselberry, Inc,* 339 US 594; 70 S Ct 870; 94 L Ed 1088 (1950).

importance of the interests involved and the nature of the subsequent proceedings." *Boddie v Connecticut,* 401 US 371, 378; 91 S Ct 780; 28 L Ed 2d 113 (1970). "The types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests." *Arnett v Kennedy,* 416 US 134, 155; 94 S Ct 1633; 40 L Ed 2d 15, 34 (1974). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v McElroy,* 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961).

In its most recent expression on the subject, the Supreme Court in *Arnett v Kennedy, supra,* rejected a due process challenge to a statute allowing the discharge of a Federal employee without a pre-disciplinary evidentiary hearing. A variety of rationales were espoused, but the uniform thrust of each opinion, including the dissents, is that the constitutional necessity of a pre-disciplinary hearing must be determined by balancing the competing interests of the government and employee.

"We have repeatedly observed that due process requires that a hearing be held 'at a meaningful time and in a meaningful manner,' *Armstrong v Manzo,* 380 US 545, 552 [85 S Ct 1187; 14 L Ed 2d 62] (1965), but it remains for us to give content to that general principle in this case by balancing the Government's asserted interests against those of the discharged employee." *Arnett v Kennedy, supra,* 416 US 134, 212 (Marshall, J., dissenting with Brennan and Douglas, JJ.).

When public employees strike, the public employer must, like a private employer, be able to

hire substitute employees so that the public business is not interrupted. In order to hire competent replacements, it may be necessary for the public employer to offer permanent employment and thus displace strikers. Where essential services have been suspended, the hiring of replacements often cannot await time-consuming adjudicatory processes.

The predominant interest secured by pre-disciplinary hearings, as advanced in *Arnett, supra,* is protection against removal of the wrong person and, assuming ultimate employee vindication, protection against interim financial deprivation.

The possibility of removal of a non-striker is minimized when, as here, the school board gives each striking teacher personal notice of the opportunity to return to the classroom before disciplinary action is taken. While on strike, a teacher receives no compensation; striking teachers do not suffer additional interim financial deprivation when disciplined.

## IV

The union contends, and we agree, that by striking, the teachers did not cease to be employees.[16] Their employment could only be terminated in accordance with the procedures set forth in § 6 of the PERA.

The Michigan labor relations acts are modeled

---

[16] *See School Dist for the City of Holland v Holland Education Association;* 380 Mich 314; 157 NW2d 206 (1968). If the employment relationship is severed when an employee strikes, arguably there would be no governing law. The PERA, in terms, governs only relationships between public employers and their public employees.

Under the NLRA, a striking employee remains an "employee" for purposes of the act and remains protected against unfair labor practices. *NLRB v MacKay Radio & Telegraph Co,* 304 US 333, 345; 58 S Ct 904; 82 L Ed 1381, 1390 (1938).

on the National Labor Relations Act (NLRA).[17] In the private sector, the use of economic pressure by the parties to a labor dispute "is part and parcel of the process of collective bargaining". *NLRB v Insurance Agents International Union,* 361 US 477, 495; 80 S Ct 419; 4 L Ed 2d 454 (1960). Under the NLRA and the Michigan labor mediation act, the term "employee" includes an employee on strike. Both acts define "employee" as including:

"any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of [under the NLRA, "any unfair labor practice"/under the labor mediation act, "any act which is illegal hereunder"], and who has not obtained any other regular and substantially equivalent employment."[18]

In construing the Michigan labor mediation act and the PERA, this Court has frequently been guided by the construction placed on the analogous provisions of the NLRA by the NLRB and the Federal courts.[19]

The NLRB and the Federal courts have developed an intricate body of law concerning the reinstatement of strikers. There are many permutations, but certain general principles have emerged. The Federal cases recognize an employer's right to hire replacements for strikers.[20] "Economic strik-

[17] 61 Stat 136 (1947) *et seq.,* 29 USCA 151 *et seq.*

[18] MCLA 423.2; MSA 17.454(2); 61 Stat 137 (1947), 29 USCA 152.

[19] *See Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974); *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 127; 223 NW2d 283 (1974); *Michigan Employment Relations Commission v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974).

[20] "Although § 13 provides, 'Nothing in this Act shall be construed so as to interfere with or impede or diminish in any way the right to strike,' it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business

ers" have limited rights of reinstatement.[21] "Unfair labor practice" strikers have an absolute right to reinstatement—unless guilty of misconduct[22]—even if the employer has hired permanent replacements.

Although a strike begins as an economic strike, if it is determined that the employer engaged in an unfair labor practice, the strike may be held to be an unfair labor practice strike and the striking employees entitled to reinstatement.[23]

Since an economic strike is protected concerted activity under the NLRA and the Michigan labor mediation act, it is an unfair labor practice for a private employer to discharge an employee for engaging in an economic strike before the employee has been replaced.[24] The Crestwood school board discharged the school teachers before hiring replacements. However, in contrast with the NLRA and the Michigan labor mediation act, the

by supplying places left vacant by strikers." *NLRB v MacKay Radio & Telegraph Co, supra,* at p 345. Note, *Replacement of Workers During Strikes,* 75 Yale L J 630 (1966).

[21] An economic striker may be entitled to re-employment when the strike ends if his job has not been filled by a permanent replacement. Even when the job has been filled, if a vacancy subsequently occurs economic strikers who have indicated their continued availability have a qualified right to re-employment. *See* Morris, *The Developing Labor Law* (1971), pp 524–529; Note, *Replacement of Workers During Strikes, supra.*

[22] *See* 45 ALR2d 887 Anno: *National Labor Relations Act: Sitdown strike, violence, or similar misconduct during strike as affecting employer's right to discharge employee or employee's right to be reinstated after strike.*

[23] *See NLRB v International Van Lines,* 409 US 48, 52; 93 S Ct 74; 34 L Ed 2d 201 (1972); *Local 833, UAW-AFL-CIO, etc v NLRB,* 112 US App DC 107, 109; 300 F2d 699, 701 (CA DC, 1962); *NLRB v Giustina Bros Lumber Co,* 253 F2d 371, 373 (CA 9, 1958); *NLRB v Reliance Clay Products Co,* 245 F2d 599 (CA 5, 1957); *NLRB v Waukesha Lime & Stone Co, Inc,* 343 F2d 504, 510 (CA 7, 1965).

[24] *See NLRB v International Van Lines, supra.* "[T]he authorities uniformly hold that the discharge of economic strikers prior, as here, to the time their places are filled constitutes an unfair labor practice." *NLRB v Globe Wireless,* 193 F2d 748, 750 (CA 9, 1951).

PERA prohibits strikes in public employment; public employee strikes, therefore, are not protected "lawful concerted [activity] for the purpose of collective negotiation or bargaining or other mutual aid and protection" within the meaning of § 9 of the PERA,[25] modeled on § 8 of the Michigan labor mediation act[26] and § 7 of the National Labor Relations Act.[27]

The Federal courts have held that a strike may be unlawful either because it has an unlawful purpose or unlawful means are used to accomplish a lawful purpose and strikers who engage in unlawful strike activity may be discharged.[28]

The action of the Crestwood school board in discharging teachers for striking in violation of the provisions of the PERA prior to the hiring of replacements was not violative of that act. It does not necessarily follow, however, that these teachers may not be entitled to reinstatement should MERC determine that the school board engaged in an unfair labor practice.

## V

The union filed an unfair labor practice charge with the MERC which has not been considered on its merits. Its amended charge, filed after the December 30, 1974 discharge of the teachers, asserts that "[a]ny interruptions in the performance of teaching duties by teachers in such district have

---

[25] MCLA 423.209; MSA 17.455(9).

[26] MCLA 423.8; MSA 17.454(8).

[27] 61 Stat 140 (1947), 29 USCA 157.

[28] Resort to violence and the so-called sit-down strike are unlawful means. Jurisdictional strikes and a strike whose aim is featherbedding are strikes for unlawful purposes under the NLRA. *See generally,* Morris, *The Developing Labor Law* (1971), pp 529–535.

been directly provoked and instigated by the unfair labor practices of respondent employer".

If MERC should determine that the employing school district committed an unfair labor practice, MERC *may,* despite the illegality of the teachers' strike, order reinstatement.

The distinction between administrative agencies and equity courts in the application of the "clean hands" doctrine was early recognized by the NLRB and the Federal courts in implementing the Congressional mandate that upon the finding of an unfair labor practice the board "take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of the [NLRA]."[29] "Equally untenable is the contention that the strikers are not entitled to reinstatement because they have not come into court with clean hands. This principle is not applicable to a proceeding in which a governmental agency is seeking enforcement of its order in the public interest." *Republic Steel Corp v NLRB,* 107 F2d 472, 479 (CA 3, 1939) *modified on other grounds,* 311 US 7; 61 S Ct 77; 85 L Ed 6 (1940).[30]

The language of the Michigan labor mediation act spelling out the remedial authority of the MERC upon finding an unfair labor practice is identical to the corresponding language of the NLRA.[31]

If the MERC finds that an unfair labor practice or other misconduct was committed by both sides, it should balance the competing equities to reach a result best effectuating the goals of the act.

---

[29] NLRA § 10(c), 61 Stat 147 (1947), 29 USCA 160(c).

[30] *See* Chafee, *Coming Into Equity with Clean Hands,* 47 Mich L Rev 1065, 1080–1081 (1949).

[31] "[T]o take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act." MCLA 423.216(b); MSA 17.455(16)(b).

"Where an employer who has committed unfair labor practices discharges employees for unprotected acts of misconduct, the Board must consider both the seriousness of the employer's unlawful acts and the seriousness of the employees' misconduct in determining whether reinstatement would effectuate the policies of the Act. Those policies inevitably come into conflict when both labor and management are at fault. To hold that employee 'misconduct' automatically precludes compulsory reinstatement ignores two considerations which we think important. First, the employer's antecedent unfair labor practices may have been so blatant that they provoked employees to resort to unprotected action. Second, reinstatement is the only sanction which prevents an employer from benefiting from his unfair labor practices through discharges which may weaken or destroy a union." *Local 833, UAW-AFL-CIO, etc v NLRB*, 112 US App DC 107, 110–111; 300 F2d 699, 702–703 (1962). Upon remand *Kohler Co*, 148 NLRB 1434 (1964); *aff'd* 120 US App DC 259; 345 F2d 748 (1965); *cert den* 382 US 836; 86 S Ct 82; 15 L Ed 2d 79 (1965).

In this case, teachers sought review under § 6. Because of the pendency of this litigation, § 6 hearings have not been conducted. The hearings may now proceed or, if the parties agree, be deferred until determination by MERC of the unfair labor practice charges.

A § 6 hearing is of limited inquiry. Its sole purpose is to determine whether the employer correctly identified the particular employee as a violator of the act's prohibition against striking. Since the hearing will ordinarily be conducted by the employer, as the officer or body having general disciplinary authority, a § 6 hearing is not an appropriate forum for the employee to assert in defense the employer's violation of the act. Allegations of or defenses premised upon employer misconduct are the exclusive province of the MERC to

resolve upon the filing of an unfair labor practice charge.

Even if it should be determined in § 6 hearings that particular teachers have violated the provisions of the PERA by striking and those determinations are sustained on review, if MERC orders reinstatement of striking teachers because it determines that this affirmative action will best "effectuate the policies of the act" and that determination is sustained on review, the teachers shall be reinstated.[32]

## VI

The status of the teachers presently in the class-

[32] To determine whether employee misconduct will bar reinstatement, the NLRB and the United States Courts of Appeals consider the gravity of the misconduct in light of the employer's unfair labor practices and discriminatory discharges. Note, *Strike Misconduct as Grounds for Denial of Reinstatement,* 32 NYU L Rev 839, 843 (1957); Sahm, *Picket-Line Misconduct and Employee Reinstatement,* 56 ABAJ 561 (1970); Lipton, *Misconduct in Concerted Activities Under the NLRA,* 8 Labor L J 299 (1957).

In the following cases reinstatement was ordered: *NLRB v Thayer Co,* 213 F2d 748 (CA 1, 1954) *cert den* 348 US 883; 75 S Ct 123; 99 L Ed 694 (1954) (improper strike; discriminatory discharge); *NLRB v Thor Power Tool Co,* 351 F2d 584 (CA 7, 1965) (abusive language; discriminatory discharge); *Allied Industrial Workers, AFL-CIO Local Union No. 289 v NLRB,* 155 US App DC 112; 476 F2d 868 (1973) (following a car to coerce and harass the occupants not to report to work; employer unfair labor practice); *NLRB v Wallick,* 198 F2d 477 (CA 3, 1952) (unprotected strike; employer unfair labor practice); *NLRB v Wichita Television Corp,* 277 F2d 579 (CA 10, 1960) (mass picketing, blocking doorway, heckling; discriminatory discharge); *NLRB v Elkland Leather Co,* 114 F2d 221 (CA 3, 1940) (throwing stones at cars of "loyal" employees; employer unfair labor practice).

In the following cases reinstatement was denied: *Seminole Asphalt Refining, Inc v NLRB,* 497 F2d 247 (CA 5, 1974) (throwing cherry bombs into company property near storage tanks containing flammable petroleum; employer unfair labor practice); *NLRB v Big Three Welding Equipment Co,* 359 F2d 77 (CA 5, 1966) (pilfering company's property; discriminatory discharge); *NLRB v R C Can Co,* 340 F2d 433 (CA 5, 1965) (threat of physical violence; discriminatory discharge); *Iowa Beef Packers, Inc v NLRB,* 331 F2d 176 (CA 8, 1964) (giving false testimony at hearing on unfair labor practice charge; unfair labor practice); *NLRB v Longview Furniture Co,* 206 F2d 274 (CA 4, 1953) (profanity, insults and striking of employee who attempted to continue working; employer unfair labor practice).

rooms pending resolution by MERC of the unfair labor practice charges is of considerable importance to the school children, parents, and school board, as well as to the teachers.

The teachers were reinstated pursuant to the Court of Appeals order of January 17, 1975. In granting leave we did not stay that aspect of that order.

Section 16(h) of the PERA[33] provides that MERC shall have the power, upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair labor practice, to petition the circuit court for "appropriate temporary relief or restraining order" and that the circuit court shall have jurisdiction to grant "to the board [MERC]" such temporary relief or restraining order as it deems just and proper.[34]

When the union filed with MERC the amended unfair labor practice charge against the school board on January 6, 1975, it requested the Commission to seek immediate relief in the circuit court pursuant to § 16(h). The director of the MERC responded the same day: "It has been the consistent policy of this Commission to refrain from petitioning for temporary relief or a restraining order under the provisions of Section 16(h) of the act. Therefore, your request is denied and the charges filed in the matter will be processed in accordance with established statutory procedures."

Whatever the reasons for this policy—financial or personnel limitations or other—the Commission may not properly adopt an arbitrary policy of refusing to consider exercising, without regard to the circumstances, power conferred upon it by the PERA.

---

[33] MCLA 423.216; MSA 17.455(16).

[34] The same provision is to be found in § 23(i) of the labor mediation act. MCLA 423.23; MSA 17.454(25).

The Commission should consider and decide the union's request. If the Commission persists in its refusal to act on the request, it would appear that an order should enter directing it to do so.[35]

---

[35] Our view that MERC should exercise its discretion regarding the teacher's request in no way portends judicial review of MERC's discretion. See Anno: *Availability of Independent Suit in Federal District Court to Attack Action Taken or Order Issued by National Labor Relations Board,* 2 ALR F 376, 399–400, § 6(c); Morris, *The Developing Labor Law,* 873–878. We simply hold that an administrative agency empowered to exercise discretion abuses its discretion and errs as a matter of law when it absolutely refuses in every and any instance to exercise its discretion.

MERC's power under § 16(h) of the PERA to seek an injunction in circuit court is identical to the NLRB's discretionary power under § 10(j) of the NLRA to seek such relief in Federal district court. For discussions of § 10(j)'s legislative history and its implementation by the NLRB and Federal courts see, Siegel, *Section 10(j) of the National Labor Relations Act: Suggested Reforms for an Expanded Use,* 13 Boston Col Ind & Comm L Rev 457 (1972); Note, *Temporary Injunctions under Section 10(j) of the Taft-Hartley Act,* 44 NYU L Rev 181 (1969).

The NLRB Field Manual lists guidelines used by the NLRB in considering whether to seek § 10(j) relief:

1. The clarity of the alleged violations;

2. Whether the case involves the shutdown of important business operations which, because of their special nature, would have an extraordinary impact on the public interest;

3. Whether the alleged unfair labor practices involve an unusually wide geographic area, thus creating special problems of public concern;

4. Whether the unfair labor practices create special remedy problems so that it would probably be impossible either to restore the status quo or effectively dissipate the consequences of the unfair labor practices through resort to the regular procedures provided in the Act for NLRB order and subsequent enforcement proceedings;

5. Whether the unfair labor practices involve interference with the conduct of an election or constitute a clear and flagrant disregard of NLRB certification of a bargaining representative or other NLRB procedures;

6. Whether the continuation of the alleged unfair labor practices will result in exceptional hardship to the charging party;

7. Whether the current unfair labor practice is of a continuing or repetitious pattern;

8. Whether, if violence is involved, the violence is of such a nature as to be out of control of local authorities or otherwise widespread and susceptible of control by § 10(j) relief.

NLRB Field Manual, § 10310.2 (reprinted in 48 Am Jur, Labor and Labor Relations, § 1016 [1974 Supp], p 127).

## VII

The Court of Appeals ordered the school board and the union to submit this dispute to compulsory arbitration. The union defends this directive on the ground that, having sought equity, the school board may appropriately be required to do equity. It is asserted that a court of equity has the power to grant "complete relief", to "order done what ought to be done", and to enter such orders as may be in the "public interest" and as "appeal to the conscience of the chancellor" so as to provide a remedy consonant with its directive that the teachers "work under conditions they had never agreed to and which remain patently obsolete in a period of mounting inflation. The court refused to impose continued 'involuntary servitude' without providing a rational means of resolving the impasse between two stubborn parties."

The Court of Appeals order was predicated on its court-rule-conferred power to "[g]ive any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief as the case may require",[36] and its statutory power "to issue any writs, directives and mandates that it judges necessary and expedient to effectuate its determination of cases brought before it".[37]

The union relies on cases where special masters, receivers or monitors were appointed. But in every such case, the person so appointed was authorized to exercise a power which the judge, if not otherwise preoccupied, could himself exercise. A special master, receiver or monitor exercises the powers conferred upon him subject to the judge's power to

---

[36] GCR 1963, 820.1(7).
[37] MCLA 600.310; MSA 27A.310.

substitute his own independent judgment at any time for the judgment of the special master, receiver or monitor unimpeded by the limitations generally pertaining when a court sits in judicial review of an arbitrator's decision.

If the compulsory arbitration ordered by the Court of Appeals contemplated the kind of supervision a judge exercises over a special master, receiver or monitor or the kind of plenary equitable power a chancellor possesses, then, in the final analysis, the court itself would be called upon to decide the contract terms, to write a contract for the parties. If it was contemplated that the court would sit in judicial review of the compulsory arbitrator's decision, then the special master-receiver-monitor analogy is inapposite.

While the PERA obliges a public employer to bargain collectively with the representatives of its employees, it is further provided that "such obligation does not compel either party to agree to a proposal or require the making of a concession".[38]

The Constitution provides that it is the Legislature, not the judiciary, that has the power to "enact laws providing for the resolution of disputes concerning public employees".[39] The Legislature has chosen to provide for the resolution of impasses in collective bargaining only in the case of municipal police and fire departments.[40] Apart from that enactment, there is no statute for the resolution of impasses in either public or private collective bargaining.

A court is without power to make a contract for parties or to confer on someone else the power to make a contract for them. By like token, it cannot

[38] MCLA 423.215; MSA 17.455(15).

[39] Const 1963, art 4, § 48.

[40] 1969 PA 312; MCLA 423.231 *et seq.;* MSA 17.455(31) *et seq.*

compel the parties to confer on someone else the power to make a contract.

A court, in law or equity, may indeed enter all appropriate orders, but only those consistent with the proper discharge of its judicial responsibility. It has been said that there is not a judicial remedy for every wrong or shortcoming in society or in a statutory scheme. The Legislature has left the resolution of collective bargaining impasses in limbo and there the matter shall remain until it chooses to act.

Reversed. No costs, a public question.

T. G. Kavanagh, C. J., and M. S. Coleman and J. W. Fitzgerald, JJ., concurred with Levin, J.

Williams, J. *(for affirmance except as to compulsory arbitration).* We decide today a significant matter of state-wide importance involving the respective rights and duties of school teachers and a school board engaging in a labor dispute characterized by the teachers' withholding their services and allegations of unfair labor practices on the part of the school board. In resolving the questions presented, the Crestwood school situation places this Court once again in its historic role of preserving traditional rights and fundamental values of the past while accommodating newer rights and requirements dictated by the necessities of the present and the future.

The ultimate and publicly understood issue in this case is—can the school board discharge allegedly unlawfully[1] striking teachers without prior notice and hearing?

---

[1] The Michigan Employment Relations Commission [hereafter "MERC"] has yet to decide whether or not the school board was guilty of an unfair labor practice thereby "provoking" the witholding of services.

This ultimate issue, however, totally depends upon a threshold issue. The threshold and dispositive issue is narrow and technical—to what extent has the public employment relations act[2] [hereafter "PERA"] repealed the teachers' tenure act,[3] [hereafter "TTA"] by implication, because TTA would clearly provide prior notice and hearing in this case.

The narrow, technical issue in turn depends upon whether the alleged repealing legislation, PERA, contains a discharge provision in conflict with the clear and detailed discharge provisions in TTA so that it can be said that the conflicting PERA provision repeals the TTA provisions by implication because PERA is subsequent legislation.

To begin with then, the *dispositive issue* in this case is—*is there a discharge provision in PERA that conflicts with and repeals the discharge provisions in TTA?*

*The fact of the matter is that there is not a single word in PERA affirmatively providing for a discharge procedure.* On the contrary, there is a PERA provision that refers outside of PERA to a separate discharge procedure clearly indicating that there is none in PERA.[4] As a consequence, it is neither legally nor logically appropriate to say that there is a discharge provision in PERA that conflicts with, and hence repeals by implication, the discharge provisions of TTA.

---

[2] MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[3] MCLA 38.71 *et seq.;* MSA 15.1971 *et seq.*

[4] "In the event of such request [for a determination whether or not there was a violation of the PERA anti-strike provision] the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, *in accordance with the law and regulations appropriate to a proceeding to remove the public employee."* (Emphasis added.) MCLA 423.206; MSA 17.455(6).

The school board and Justice Levin's opinion, however, attempt to *infer* a conflicting discharge provision in PERA, since they cannot refer to any provision which in so many words sets up a discharge provision, for the simple reason that, in fact, there isn't any. It is submitted that it is legally unacceptable to construe repeal of a well-established statutory provision by a mere inference in a subsequent statute, especially when the meaning of that inference is dubious at the best.

As to the dispositive issue, bearing in mind this Court's duty to reasonably and harmoniously construe legislation bearing on the same subject matter, and bearing in mind as well our duty to protect basic rights once granted by legislation or otherwise, it is our opinion that there is no PERA discharge provision that conflicts with, and hence repeals by implication, the traditional rights of notice and hearing prior to discharge which are at the heart of TTA. As a consequence, we affirm the Circuit Court order of January 10, 1975, and the Court of Appeals result minus "compulsory" arbitration.

### I —*Facts*

Our Brother Levin cogently recites the factual background in this case in Section I of his opinion. It is worth noting, in addition to that recitation, that the circuit court based its order of January 10, 1975, setting aside the board's discharge resolution of December 30, 1974, and reinstating the teachers, on the failure of the board to follow the procedural requirements of TTA, which a majority of that Court, Judges Bowles and Roumell,[5] found

---

[5] It is significant to note that both Judge Bowles and Judge Roumell have had distinguished backgrounds in labor law. Judge Roumell has previously served as Director of the Michigan office of the NLRB, as

to be controlling in this situation. The Court of Appeals, while unanimous in its affirmation of the circuit court order and finding of procedural infirmity, based its decision not on TTA alone but rather on a blend of the requirements of TTA and PERA § 6,[6] the latter, the Court holding, being controlling in the two "irreconcilable" instances of conflict which it found.

## II —*Pertinent Statutory Provisions*

The critical statutory provisions of TTA and PERA read as follows:

*TTA*

"The controlling board, if it decides to proceed upon * * * charges, [against a teacher] shall furnish the teacher with a written statement of the charges including a statement of the teacher's rights under this article, and shall, at the option of the teacher, provide for a hearing to take place not less than 30 nor more than 45 days after the filing of such charges." MCLA 38.102; MSA 15.2002.

"Any hearing held for the dismissal or demotion of a teacher, as provided in this act, must be concluded by a decision in writing, within 15 days after the termination of the hearing. A copy of such decision shall be furnished the teacher affected within 5 days after the decision is rendered." MCLA 38.104(f); MSA 15.2004(f).

"A teacher who has achieved tenure status may appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a state tenure commission." MCLA 38.121; MSA 15.2021.

*PERA § 6*

"Notwithstanding the provisions of any other law,

Director of the Michigan Employment Security Commission, and as the first Director of the Michigan Department of Labor. Judge Bowles, in addition to a distinguished career as a labor arbitrator in private practice, served as Chairman of a Labor Mediation Board in another state, and as Chairman of the NLRB Detroit field division.

[6] MCLA 423.206; MSA 17.455(6).

any person holding such a position who, by concerted action with others, and without the lawful approval of his superior, wilfully absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his duties for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. In the event of such request the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, in accordance with the law and regulations appropriate to a proceeding to remove the public employee. The proceedings shall be undertaken without unnecessary delay. The decision of the proceeding shall be made within 10 days. If the employee involved is held to have violated this law and his employment terminated or other discipline imposed, he shall have the right of review to the circuit court having jurisdiction of the parties, within 30 days from such decision, for determination whether such decision is supported by competent, material and substantial evidence on the whole record."

## III —*Applicable Rules of Statutory Construction*

General comparison of the pertinent sections of TTA and PERA above indicates that they are statutes *in pari materia.* It is therefore our duty to harmonize them if we can:

"[I]f the courts can by any fair, strict or liberal construction find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and

construing them together in harmony with the whole course of legislation upon the subject it is their duty to do so." *Rathbun v State of Michigan,* 284 Mich 521, 544–545; 280 NW 35, 44 (1938), quoting with approval from *State ex rel Ellis v Givens,* 48 Fla 165, 174; 37 So 308 (1904).

See also *Borden, Inc v Department of Treasury,* 391 Mich 495, 511, 523; 218 NW2d 667 (1974) (Opinion of WILLIAMS, J.).

Additionally, insofar as TTA and PERA cannot be reconciled and one act is in conflict with the other, PERA as the later legislation will be deemed to supersede TTA *pro tanto.* The Court of Appeals properly cited the general rule in this regard from *Wayne County Civil Service Commission v Board of Supervisors,* 384 Mich 363, 373; 184 NW2d 201 (1971):

"This is not to say that the act of 1965 repeals outright the act of 1941. Respecting as always our long since declared and regularly maintained rule that repeals by implication are not favored, and that it is only when the two measures in view are so incompatible that both or all cannot fully stand, we can only find that this is a striking instance for application of that rule which, back in 1877, was written into the Court's opinion of *Breitung v Lindauer* (1877), 37 Mich 217, 233:

" 'The rule is that the latter act operates *to the extent of the repugnancy,* as a repeal of the first, or, if the two acts are not in express terms repugnant, yet if the latter *covers the whole subject of the first,* and contains new provisions showing that it was intended as a substitute, it will operate as a repeal.' " (Footnote omitted.)

Further, there is voluminous case law standing for the proposition that a "repugnancy" pronounced enough as to work a repeal by implication

"must be clear and unavoidable"[7]—if the allegedly conflicting statutes "can be reconciled and a purpose found to be served by each", then there is no conflict. *Detroit Police Officers Association v City of Detroit,* 391 Mich 44, 65; 214 NW2d 803 (1974). The guiding principles of construction in this context are as follows:

" 'Repeal by implication is not permitted if it can be avoided by any reasonable construction of the statutes. *Couvelis v. Michigan Bell Telephone Co.,* 281 Mich 223 [274 NW 771 (1937)]; *People v. Hanrahan,* 75 Mich 611 (4 LRA 751) [42 NW 1124 (1889)]. If by any reasonable construction 2 statutes can be reconciled and a purpose found to be served by each, both must stand, *Garfield Township v. A. B. Klise Lumber Co.,* 219 Mich 31 [188 NW 459 (1922)]; *Edwards v. Auditor General,* 161 Mich 639 [126 NW 853 (1910)]; *People v. Harrison,* 194 Mich 363 [160 NW 623 (1916)]. The duty of the courts is to reconcile statutes if possible and to enforce them, *Board of Control of the Michigan State Prison v. Auditor General,* 197 Mich 377 [163 NW 921 (1917)]. The courts will regard all statutes on the same general subject as part of 1 system and later statutes should be construed as supplementary to those preceding them, *Wayne County v Auditor General,* 250 Mich 227 [229 NW 911 (1930)]. See, also, *Rathbun v. State of Michigan,* 284 Mich 521 [280 NW 35 (1938)].' *People v. Buckley,* 302 Mich 12, 22 [4 NW2d 448 (1942)].

" 'This court has held that only, when 2 acts are so incompatible that both cannot stand, does a later act repeal a former.' *In re Estate of Reynolds,* 274 Mich 354, 360 [264 NW 399 (1936)]." *Valentine v Redford Twp Supervisor,* 371 Mich 138, 144; 123 NW2d 227 (1963).

See also *In re Lambrecht,* 137 Mich 450, 455; 100 NW 606 (1904); *Garfield Twp v A. B. Klise Lumber Co,* 219 Mich 31, 35; 188 NW 459 (1922);

---

[7] "[T]he repugnancy must be clear and unavoidable." *In re Lambrecht,* 137 Mich 450, 455; 100 NW 606 (1904).

*Saginaw City Council v Saginaw Board of Estimates,* 256 Mich 624, 633; 239 NW 872 (1932), and citations collected therein.

### IV —*Does PERA Provide a Discharge Procedure in Conflict with TTA?*

TTA, as the statutory excerpts set out in Part II above indicate, provides a very specific discharge procedure including furnishing written charges along with a statement of the teacher's rights, a hearing not less than 30 nor more than 45 days after filing charges, and a decision in writing within 15 days of the conclusion of the hearing, which must be furnished the teacher within 5 days after it is rendered.

TTA is in effect "the teachers' Magna Charta."[8] The heart of it is this guarantee of due process in any discharge proceeding, especially prior notice and hearing.

It must be presumed therefore that if the Legislature should decide to repeal what it had so specifically granted it would not do so in an offhand manner but by specific repeal or repeal by implication clear beyond peradventure. As we said in *Rathbun v State of Michigan,* 284 Mich 521, 544; 280 NW 35 (1938), quoting 59 CJ, p 1051:

> "it will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, *unless it has done so in express terms* * * * ." (Emphasis added.)

Without question, PERA provides no specific repeal of TTA discharge procedure. Does PERA repeal TTA's discharge procedure by implication

---

[8] *Cf. Shiffer v Board of Education of Gibraltar School Dist,* 393 Mich 190, 209–210; 224 NW2d 255 (1974) (Opinion of WILLIAMS, J.).

by setting up a discharge procedure in direct, unavoidable conflict? The answer is that it does not.

Nowhere in PERA is any discharge procedure set up. PERA does not specify that there must be notice and hearing before discharge. PERA does not specify that notice and hearing are not necessary before discharge. PERA § 6 does not provide in any way, shape, or fashion the mechanism or authority for a discharge or disciplinary proceeding.

What PERA does set up is a procedure in its own words to be "a determination as to whether he [the alleged striker] did violate the provisions of this act". The pertinent language is:

"[the alleged striker] shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing within 10 days after regular compensation of such employee has ceased or other discipline has been imposed."

This hearing obviously is not a discharge or discipline hearing because it is only requested *after* discharge or discipline. In establishing the rules of conduct for such a determination, there is specific reference to a body of rules outside of PERA, which, in this case, Justice Levin's opinion agrees is TTA. The text here referred to is as follows:

"In the event of such request [for a determination whether or not there was a violation of the PERA anti-strike provision] the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, *in accordance with the law and regulations appropriate to a proceeding to remove the public employee.*" (Emphasis added.)

In short, since PERA does not set up a discharge procedure itself and specifically refers outside of PERA for such a procedure, it cannot be said, following the rules of statutory construction set out in Part III of this opinion, that PERA by implication has repealed the discharge procedure in TTA.

As a matter of fact, not only is there no statutory repugnancy here, it is perfectly possible and reasonable to read these statutes together, *i.e.,* a PERA hearing shall occur only after there has been discipline imposed following the procedural dictates of TTA.[9] We recognize that some might feel that the TTA time limits and requirements, though not by any means unduly long, might better be shortened to meet the exigencies of strike situations. This approach was in fact taken by the Court of Appeals in this case. However, we do not write legislation; the time periods involved are properly matters for legislative consideration and action.

Accordingly, as outlined above, we hold that the Crestwood Board of Education erred in discharging the subject teachers summarily, without prior notice and hearing, and without reference to the applicable provisions of TTA.

## V —*Contrary Contention*

The opinion of our learned Brother LEVIN, however, states:

"Section 6 of the PERA empowers the officer or body generally having disciplinary authority over an employee to terminate the employment of or impose other

---

[9] The Legislature's action in 1967 amending MCLA 38.102; MSA 15.2002, well after the date of enactment of PERA, could be said to indicate a reaffirmation of legislative intent to preserve the discharge notice and hearing provisions in TTA. 1967 PA 216.

discipline on an employee who strikes in violation of the PERA. In providing that an employee's request for a hearing to determine whether he did violate the PERA be filed within ten days *after* regular compensation has ceased or other discipline has been imposed, the Legislature manifested an intention that the officer or body may impose discipline without a prior hearing."

The conclusion reached in the first sentence is inferred in the second sentence from the following language in PERA § 6:

"Notwithstanding the provisions of any other law, any person holding such a position who, by concerted action with others * * * absents himself * * * shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. * * * "

Nowhere in this PERA language is there any description of a removal procedure. All there is is a description of a procedure for a determination as to violation of the PERA anti-strike provision *after* there has been a removal proceeding in no way described in PERA.

Consequently, the best that can be said for the conclusion in our Brother Levin's opinion that PERA provides a procedure for discharge is that it is based on an inference. It certainly is not set out in so many words in PERA.

So the first question is—can there be a repeal by implication where the conflicting provision proposed to substitute for a well-established and precise provision is no more than a possible inference? Let us recall the direct *Rathbun* reference to this:

"[I]t will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, *unless it has done so in express terms* * * * ." (Emphasis added.) 284 Mich 521, 544.

But the second question is even more damaging —can there be an inference from the above quoted PERA language that not only is there a removal procedure specified but that what is specified is discharge without prior notice and hearing? Surely this is too much—a true *non sequitur.*

Certainly the fact that an alleged striker has the right to contest the alleged violation of PERA within ten days after he has been disciplined, discharged or his pay stopped says nothing as to how his discipline or discharge was accomplished, *i.e.,* with or without prior notice or with or without prior hearing. This is the pertinent language of the act:

"[The alleged striker] shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing * * * within 10 days after regular compensation of such employee has ceased or other discipline has been imposed."]

All it says is that after the alleged striker has been disciplined, he may request a hearing, nothing more—not a single word as to how the discipline was imposed.

Consequently, it is submitted this kind of an inference supplies no basis whatsoever to conflict with and repeal by implication a specific provision for the traditional prior notice and hearing provided in TTA.

In passing, it may be noted as well that the force of the phrase "[n]otwithstanding the provi-

sions of any other law", which Justice Levin heavily relies upon in his analysis, focuses on establishing that the described concerted action "shall be deemed to be [a] strike" and, possibly, to the right of the person to request a determination as to whether he was or was not in violation.

We also take note that the opinion of Justice Levin expresses a commendable concern that there be in Michigan under aegis of PERA/MERC, similar to the Federal pattern of NLRA/NLRB, a unitary procedure for the discipline of public employees who strike. This is a concern, as Justice Levin's opinion points out, that this Court as a whole shares, and this specific opinion agrees with. However, in his opinion, Justice Levin has pushed this concern further than the Legislature has given any warrant, and at too great a cost in established human rights.

It must be recognized that there is at least one significant difference between the NLRA/NLRB and PERA/MERC patterns, that is that the Congress in establishing the self-contained NLRA/NLRB system specifically recognized and bottomed the system on the right to strike to balance employer power and labor power.[10] As the United States Supreme Court noted in *Division 1287, Amalgamated Association of Street, Electric Railway & Motor Coach Employees v Missouri,* 374 US 74, 82; 83 S Ct 1657; 10 L Ed 2d 763 (1963), *reh den,* 375 US 870; 84 S Ct 29; 11 L Ed 2d 100 (1963):

"Collective bargaining, with the right to strike at its core, is the essence of the federal scheme."

---

[10] *See* 61 Stat 140 (1947), 29 USC 157 which reads in pertinent part:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, *and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection* * * * ." (Emphasis added.)

On the other hand, the Michigan Legislature in PERA § 6 went back to the Hutchinson Act which was specifically "[a]n act to prohibit strikes by certain public employees".[11] To compensate for the lack of strike power, the Legislature over the years had guaranteed to public employees specific rights and procedures, among them those outlined in TTA. These rights and procedures, to a greater or lesser extent, carried over with PERA.

Historically and legally, therefore, while PERA was a big step forward by the Legislature in responding to the constitutional mandate to establish a system of collective bargaining for public employees,[12] it is common knowledge that PERA did not in and of itself establish a clear, unified system but rather staked out a new system co-existing with an old system, with a murky gray area of operation and applicability in between them.[13] The all too vivid judicial history in recent years of conflicting and ineffectual reactions to ever-worsening school labor relations has highlighted and increased public awareness and understanding of the legislative hiatus in the interlock between PERA and TTA.

Justice LEVIN has courageously applied his very considerable legal and forensic talents to terminate this legislative mish-mash. His opinion has produced a new order under the aegis of PERA/MERC, but at the cost of eliminating the important and traditional rights of notice and hearing before discharge and at the further cost of blinking at the recognized rules of statutory construction.

---

[11] 1965 PA 379.

[12] Const 1963, art 4, § 48.

[13] *See* for example, Detroit Free Press, March 7, 1975, p 8-A (Editorial).

We concede that the result of our opinion is not as tidy as that of Justice Levin's opinion and leaves much for the Legislature to do.[14] We reach this result not out of any overwhelming reluctance to utilize the full potential of judicial power but through the recognition that the proper balance of administrative order and efficiency on the one hand, and personal rights on the other, necessary to meet the complex demands of teacher—school board relations at this time of extreme tension is not a matter that lends itself to the limited options of judicial construction of the material before us but requires the most comprehensive, as well as the wisest, employment of the Legislature's political and drafting skills. As a matter of fact, the Legislature is this very moment vigorously and exhaustively examining the subject, and the media have expressed the hope that a new solution carefully balancing all the equities is in the making. Under these circumstances and at this time, we feel the Legislature is best equipped to tackle the larger policy decisions and this Court can better serve the public by solving this case on the fundamentals of legislative construction, pointing out such anomalies in the PERA/TTA interlock as this case has brought to our attention.

## VI —*Teachers Remained Employees Under Tenure Act While on Strike*

The Crestwood School Board further contends

---

[14] We are aware that in reaching this conclusion spelled out above, we outline a procedural system containing, potentially, some redundancy. For example, in cases where discharge proceedings are commenced solely on the basis of alleged participation in an unlawful strike, the question of participation in the strike can be raised *both* in the TTA hearing *and* in the PERA § 6 hearing. We do not, however, make legislation, we can only interpet and construe what we are given by the Legislature.

that the discharged teachers, by striking "discontinued their services" within the meaning of Art V, § 1 of the teachers' tenure act, MCLA 38.111; MSA 15.2011,[15] thereby forfeiting the procedural safeguards of that act. This is an issue which this Court specifically reserved for decision in *Shiffer v Board of Education of Gibraltar School Dist,* 393 Mich 190, 201–203; 224 NW2d 255 (1974).

We agree with Justice LEVIN's analysis on this point, in Section IV of his opinion, concluding that "by striking, the teachers did not cease to be employees". In addition, we note that in this case there was a contractual employment relationship between the board and the teachers during the fall of 1974, though the specific terms of that contractual relationship were court-ordered, and that the teachers had actually been working on the job.[16] *School Dist for the City of Holland v Holland Education Association,* 380 Mich 314; 157 NW2d 206 (1968) (Opinions of O'HARA, SOURIS and KELLY, JJ.). *Cf.* OAG 1969–1970, No 4704, p 150 (June 24, 1970).

## VII —*Probationary v Tenured Teachers*

The Crestwood School Board further contends that the circuit court and the Court of Appeals erred in their opinions in failing to distinguish

---

[15] MCLA 38.111; MSA 15.2011, reads:

"No teacher on continuing tenure shall discontinue his services with any controlling board except by mutual consent, without giving a written notice to said controlling board at least 60 days before September first of the ensuing school year. Any teacher discontinuing his services in any other manner than as provided in this section shall forfeit his rights to continuing tenure previously acquired under this act."

[16] "On October 8, 1974, Wayne County Circuit Judge Joseph G. Rashid ordered that the teachers return to work and that the Board implement the terms of its proposed salary schedule." Appellant's Brief, p 1.

between probationary and tenured teachers with respect to the applicability of the procedural provisions of TTA.

Article II, § 4 of the TTA, MCLA 38.84; MSA 15.1984 reads in its entirety as follows:

"Articles 4, 5, and 6 shall not apply to any teacher deemed to be in a period of probation."

Articles 4 and 6 contain the hearing, review, and other procedural protections and rights guaranteed by law to tenure teachers.

The fact that probationary teachers are not included in those specific sections does not mean, however, that probationary teachers have no procedural rights at all. As this Court has previously noted:

"[T]he intent of the *entire* [teachers' tenure] act was to eliminate capricious and arbitrary employment policies of local school boards. *This includes the probationary as well as the tenure period of employment.*" [Latter emphasis added.] *Munro v Elk Rapids Schools,* 383 Mich 661, 688, 691; 178 NW2d 450 (1970) (Dissenting opinion of T. G. Kavanagh, J.), later *aff'd* in full in *Munro v Elk Rapids Schools,* 385 Mich 618; 189 NW2d 224 (1971) (On Rehearing).

In guarding against such arbitrary and capricious employment policies and, in light of the lack of legislative directive on the issue of the proper procedure to be followed in disciplining or discharging probationary teachers, the courts are forced to act to protect teachers from unreasonable and, potentially, unconstitutional dismissal.[17] *Cf.*

---

[17] We note that the United States Supreme Court has not found an absolute constitutional right of a probationary teacher to due process protections in dismissal cases. *See Board of Regents of State Colleges v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972); *Perry v*

*Hortonville Education Association v Hortonville Joint School Dist.* 66 Wis 2d 469, 225 NW2d 658 (1975).

The Court of Appeals has previously acted in this regard to guarantee the right of review of dismissal to probationary teachers though TTA does not specifically make provision for such review. *Caddell v Ecorse Board of Education,* 17 Mich App 632, 635; 170 NW2d 277 (1969). Such review does not involve the same level of employment termination protection afforded tenure teachers by statute.[18] Tenure teachers may only be discharged for "reasonable and just cause". MCLA 38.101; MSA 15.2001. The discharge of a probationary teacher, however, in the absence of specific legislation or contractual provision on point, is permissible only where it is neither unreasonable

*Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). However, the Supreme Court has noted that due process *does* accord protection where, as here, the State, acting through the school administration, makes "any charge against him [the teacher] that might seriously damage his standing and associations in his community * * * . For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' " 408 US 564, 573.

As the Supreme Court of Wisconsin has ruled, referring to *Roth, supra:*

"It is apparent that such charges [discharge for strike activities] could detrimentally affect an individual's reputation in the labor market and thereby significantly undermine his opportunities for re-employment. Due process requires a notice and hearing and an opportunity for the teachers to clear themselves of such charges." *Hortonville Education Association v Hortonville Joint School Dist,* 66 Wis 2d 469, 225 NW2d 658 (1975).

[18] "Assuming the necessity of eliminating 'capricious and arbitrary employment policies' of local school boards, that requirement can be satisfied by forcing the school board to supply a reason for not rehiring and to afford the teacher an opportunity to respond and be heard. The difference between probationary and tenure teachers can still be preserved if in the probationary case courts are permitted 'to respect bases for non-retention enjoying minimal factual support and bases for non-retention supported by subtle reasons.' " (Footnote omitted.) *1970 Annual Survey of Michigan Law—Local Government,* 17 Wayne L Rev 599, 615 (1971).

nor arbitrary nor beyond the scope of the board's authority. *Caddell, supra,* 636.

Similarly, we hold today, in the absence of specific legislation on point, that probationary teachers have a right to notice and a hearing prior to discharge. Again, probationary teachers are not thereby converted into tenure teachers by virtue of this right—the hearing, if requested promptly, would only be concerned with the issues of whether the employment termination was arbitrary and unreasonable, or whether it was action outside the scope of the board's authority, rather than the broader issues of "reasonable and just cause" for discharge in the case of tenure teachers who have been given broader statutory protection.

Accordingly, we hold that the Crestwood Board of Education erred, *inter alia,* in discharging *both* its probationary and tenured teachers without prior notice and hearings.

### VIII — *Circuit Court Injunction Properly Issued*

The board also contends that, in any case, the teachers were not entitled to equitable relief in the form of an injunction due to their lack of "clean hands" in violating a previous circuit court injunctive order of October 22, 1974. The teachers respond, *inter alia,* that appellant school board likewise violated injunctive orders in the course of these protracted proceedings and, accordingly, has no cause to complain.

The Court of Appeals agreed with the teachers, noting that "[a]ll three judges in the trial court agreed that both parties were in 'open, flagrant defiance and in violation of [Judge Rashid's] orders' ". 57 Mich App 636, 647. Dissenting Judge Rashid, on

the circuit court, ruling directly on the "clean hands" question, explicitly opined:

"I feel that both sides have been in error on this score. * * * The fact is that both sides actually violated the terms of the [October 8 and 22, 1974] order."

We will not second-guess the courts below, especially the trial court which has had direct contact with this litigation throughout its course, on this issue. As we have previously ruled in *Thompson v Enz,* 385 Mich 103, 110; 188 NW2d 579 (1971):

"[A]s a general rule, equity will administer such relief as the nature, rights, facts, and exigencies of the case demand at the close of the trial or at the time of the making of the decree." Quoting from 27 Am Jur 2d, Equity, § 248, p 818.

The circuit court acted within its discretion in issuing its injunction and order of January 10, 1975.

### IX —*Court of Appeals Compulsory Arbitration Order Improper*

We do not believe that the *sua sponte* order of the Court of Appeals requiring compulsory arbitration was a proper exercise of judicial discretion in this case.

### X —*Conclusion*

We hold, as did the circuit court majority and the Court of Appeals, that appellee teachers were discharged in a procedurally improper manner.

Accordingly, we affirm the Circuit Court order of January 10, 1975. We further affirm the conclu-

sion, except as to compulsory arbitration, but not the analysis of the Court of Appeals. This matter is remanded to Wayne Circuit Court for further proceedings not inconsistent with this opinion.

No costs, a public question being involved.

T. M. KAVANAGH and SWAINSON, JJ., concurred with WILLIAMS, J.