BAY CITY SCHOOL DISTRICT v BAY CITY EDUCATION
ASSOCIATION, INC

REDFORD TOWNSHIP v MORAN

BROWN v REDFORD TOWNSHIP

Docket Nos. 74148, 74698, 74699. Argued December 17, 1985 (Calendar Nos. 1-3). Decided July 22, 1986.

The Bay City Education Association, Inc., and other unions filed unfair labor practice charges with the Employment Relations Commission against the Bay City School District and Bay and Saginaw Counties, alleging that the school board's refusal to bargain with regard to its decision to terminate adult education and special education programs violated the unions' contractual rights and its rights under the public employment relations act and constituted illegal subcontracting in violation of collective bargaining agreements. Following demands by the unions for arbitration, the school board brought an action in the Bay Circuit Court against the associations, several members of the associations, and the American Arbitration Association, seeking to enjoin arbitration of the grievances on the ground that the pendency before the MERC of unfair labor practice charges arising from the same dispute precluded arbitration because the MERC had exclusive jurisdiction to decide the issues. The court, William J. Caprathe, J., granted summary judgment for the unions. The Court of Appeals, DANHOF, C.J., and BRONSON, J. (PETERSON, J., concurring), reversed in an opinion per curiam, holding that the issues had been placed within the exclusive jurisdiction of the MERC and were not subject to private grievance arbitration (Docket No. 66719). The unions appeal.

William Brown, Pierce Moran, and Thelma Haney, stewards of Teamsters Local 214, were discharged by their employer, Redford Township, for their involvement in a work stoppage in violation of a provision in their collective bargaining agree-

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1735 et seq.
What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.

ment. After pursuing administrative remedies, including demands for arbitration, they filed unfair labor practice charges with the Employment Relations Commission, claiming violation of the public employment relations act. Arbitrators ordered the stewards reinstated. The MERC found that the discharges of Brown and Moran were not prohibited by the PERA, but that the discharge of Haney violated the PERA. Redford Township brought an action in the Wayne Circuit Court seeking to have the arbitration awards in favor of Moran and Haney set aside. The court, Victor J. Baum, J., ordered enforcement of the awards. Brown brought a separate action in the Wayne Circuit Court, seeking enforcement of his award. The court, Theodore R. Bohn, J., ordered enforcement. The cases were consolidated in the Court of Appeals, and the Court, BEASLEY, P.J., and V. J. BRENNAN and BENSON, JJ., affirmed (Docket Nos. 61307, 67855, 69548). The township appeals.

In an opinion by Justice LEVIN, joined by Justices BRICKLEY, CAVANAGH, and RILEY, the Supreme Court *held:*

The filing of an unfair labor practice claim with the Employment Relations Commission does not preclude an arbitrator from resolving a breach of contract claim arising out of the same controversy; rights arising under a contract may be enforced unless the contract provides protection prohibited by the public employment relations act or the arbitrator's decision conflicts with a prior decision of the commission.

1. Contractual and statutory claims, whether or not based on the same controversy, generally involve different legal and factual issues to be decided in different forums. Conduct left unprotected under the public employment relations act may be protected by a collective bargaining agreement; the failure of the PERA to protect particular conduct does not mean that the conduct is prohibited.

2. The public employment relations act does not in terms deny employees the right to pursue contractual grievances. While the pendency of MERC proceedings does not generally preclude an arbitrator from providing a remedy for a breach of contract claim arising out of the same controversy, conflicting decisions can occur where a contract provides something prohibited under the PERA or where the contract and the PERA protect identical rights and the arbitrator and the MERC make conflicting findings of fact. Where activities protected by a contract are neither prohibited nor protected by the PERA, there is no conflict. A contract cannot, however, protect conduct prohibited by the PERA. The parties do not have the power to legitimate violations of public policy. Such a provision would

not be enforceable, nor would an arbitration award based on it. Also, an arbitration award which conflicts with a decision of the MERC will not be enforced where the right asserted under the contract is identical to that adjudicated by the MERC. A right is identical where the precise determinations necessary to establish protected conduct in either forum are the same.

3. In *Bay City,* an arbitrator had not heard or decided the disputed questions presented by the contractual grievances. Because a conflict in the decisions of the MERC and an arbitrator does not appear in the record, it cannot be determined whether the unions were seeking to enforce identical rights in the MERC and the arbitration proceedings. Thus, remand to the circuit court is required for reinstatement of the summary judgment granted the union which would permit arbitration. If the rights ultimately should prove to be the same and the arbitration award conflicts with the MERC decision, the arbitration award can be overturned.

4. In *Redford,* there is no conflict between the decision of the MERC in finding that Redford did not violate the PERA and the decision of the arbitrators in finding that the stewards should be reinstated pursuant to the collective bargaining agreement. The stewards' employment was terminated because of alleged. violations of the collective bargaining agreement.

Chief Justice WILLIAMS, joined by Justice BOYLE, concurring, stated that in *Redford,* because the discharge notices specifically stated that the employees were being discharged for violation of the collective bargaining contract, the relief ordered by the arbitrators did not conflict with the decision of the MERC.

*Bay City,* reversed and remanded.

*Redford Twp,* affirmed.

Justice ARCHER took no part in the decision of this case.

133 Mich App 729; 349 NW2d 808 (1984) reversed.

136 Mich App 65; 356 NW2d 270 (1984) affirmed.

### OPINION OF THE COURT

1. LABOR RELATIONS — PUBLIC EMPLOYMENT — EMPLOYMENT RELATIONS COMMISSION — UNFAIR LABOR PRACTICES — ARBITRATION.

The filing of an unfair labor practice claim with the Employment Relations Commission does not preclude an arbitrator from resolving a breach of contract claim arising out of the same controversy; rights arising under a contract may be enforced unless the contract provides protection prohibited by the public employment relations act or the arbitrator's decision conflicts

with a prior decision of the commission (MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.*).

2. LABOR RELATIONS — PUBLIC EMPLOYMENT — EMPLOYMENT RELATIONS COMMISSION — UNFAIR LABOR PRACTICES — COLLECTIVE BARGAINING AGREEMENTS.

An arbitration award under a collective bargaining agreement which conflicts with a decision by the Employment Relations Commission will not be enforced where the right asserted under the agreement is identical to that adjudicated by the commission; a right is identical where the precise determinations necessary to establish protected conduct in either forum are the same.

*Allsopp, Fitzgerald & Kolka* (by *William W. Allsopp*) for Bay City Schools, et al.

*Frank A. Guido,* General Counsel, Technical, Professional and Officeworkers Association of Michigan, for Moran, Haney, and Brown.

*Foster, Swift, Collins & Coey, P.C.* (by *Thomas A. Baird*), for Bay City Education Association, et al.

*Christopher J. Johnson* for Redford Township.

Amici Curiae:                    ·

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs* and *Mary Ellen Gurewitz*), for Detroit Fire Fighters Association and Detroit Federation of Teachers; *Miller, Cohen, Martens & Ice, P.C.* (by *Mark H. Cousens*), for Michigan Federation of Teachers.

LEVIN, J. The issue in these cases, consolidated for argument on appeal, is whether the pendency of unfair labor practice charges before the Michigan Employment Relations Commission precludes arbitration of breach of contract claims where the statutory claims submitted to the MERC and the

contractual claims submitted to arbitration arise out of the same controversy.

In *Detroit Fire Fighters v Detroit,* 408 Mich 663; 293 NW2d 278 (1980), this Court held that the MERC could not defer consideration of an unfair labor practice charge filed with the MERC pursuant to the public employment relations act, until determination, pursuant to a collective bargaining agreement, by arbitration of a grievance arising out of the same controversy that gave rise to the unfair labor practice charge. The instant cases present a different issue, namely, whether pendency of a statutory claim before the MERC precludes arbitration of the contractual claim.

Contractual and statutory claims, whether or not based on the same controversy, generally involve different legal and factual issues that are to be decided in different fora. A collective bargaining agreement may provide benefits to a union or its members not provided in the PERA without conflicting with the PERA. The PERA is not implicated unless the decisions of the MERC and an arbitrator conflict. We conclude that rights arising under the contract may be enforced unless the contract protects what the PERA prohibits or the arbitrator's decision conflicts with a prior MERC decision.

The decision of the Court of Appeals in *Bay City School Dist v Bay City Ed Ass'n,* 133 Mich App 729; 349 NW2d 808 (1984), precluding arbitration was erroneous; since an arbitration hearing of the contractual claims has not been held, a conflict in decisions of the MERC and an arbitrator does not appear on this record. The decision in *Redford Twp v Redford Twp Civil Service Comm,* 136 Mich App 65; 356 NW2d 270 (1984), in which a different panel of the Court of Appeals held that arbitration was not precluded, is affirmed.

I

The facts and history of proceedings follow.

A

In *Bay City,* the school board for Bay City and Bay and Saginaw counties resolved to transfer its special education program to another school district and began making similar plans for its adult education program. Fearing the loss of jobs and wages, unions representing teachers, secretarial and clerical workers, and other nonacademic employees sought to bargain about the transfers. The school board refused to bargain. The unions filed unfair labor practice charges with the MERC complaining that the school board's actions had violated the unions' rights under § 10(1)(a) and (e) of the PERA.[1] Later in the month, the unions filed grievances alleging that the school board's actions constituted subcontracting prohibited by the collective bargaining agreements.[2]

After the unions demanded arbitration, the school board commenced the instant action in the circuit court to obtain an order that arbitration "shall not occur due to the exclusive jurisdiction of MERC." The court granted the unions' motion for summary judgment, stating that "if there's some-

[1] Section 10(1)(a) provides that it is an unfair labor practice for a public employer to "interfere with, restrain or coerce public employees in the exercise of their rights," and § 10(1)(e) provides that it is an unfair labor practice for a public employer to "refuse to bargain collectively." MCL 423.210(1)(a), (e); MSA 17.455(10)(1)(a), (e).

[2] The grievances were said to arise under a number of sections of the collective bargaining agreements. For example, the nonacademic school employees association alleged that grievances arose under § 24.1 (ban on displacement of regular employees by nonunit personnel) and § 24.2 (ban on subcontracting of unit work). The education association alleged that the grievances arose under § 2.100 (recognizing the "Association as the sole and exclusive bargaining representative") and § 3.100 (wherein "the board undertakes and agrees . . . not [to] deprive or coerce any teachers in the employment of any rights").

thing more that was contracted for in this case than what is available by way of the statute [PERA], then I think the parties have a right to pursue that more." The Court of Appeals, relying on *Detroit Fire Fighters,* reversed and remanded for entry of a declaratory judgment, "stating that the parties' dispute concerning subcontracting, together with any other issues submitted to MERC, have been placed within MERC's exclusive jurisdiction and are not subject to any private grievance arbitration."[3]

B

In *Redford,* a mechanic in the Redford sanitation department was suspended for swearing and throwing an object at a supervisor. After receiving notice of the suspension, union stewards, William Brown and Pierce Moran, spoke to the Director of Public Services and threatened an employee walkout the next day if the suspension were not rescinded. The next morning Brown and Moran presented the director with a grievance regarding the suspension. The director said the grievance would be processed through the normal procedures.

The director asked and then ordered the employees to go to work, but they refused. Moran was seen talking to the employees, and when he left the premises they followed. Redford claims that Moran ordered picket signs from a printer and distributed them.

That same morning, Thelma Haney, a union steward for the clerical employees, learned of the work stoppage. After meeting with union leaders, including Moran, she began calling clerical employees in other Redford departments. She in-

---

[3] *Bay City School Dist v Bay City Ed Ass'n, supra* at 732.

structed the employees that picket lines had been formed and notified them of a provision of the collective bargaining agreement that stated, "It shall not be a violation of this Agreement and it shall not be a cause for a discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute . . . ."

A week later, the three stewards received notices informing them that their employment was terminated for activity in violation of a provision (art XII, § 1) of the collective bargaining agreement that provided, "No employee, Union member or other agent of the Union shall call or cause any strike, work stoppage or cessation of employment of any kind whatsoever."

The stewards pursued a number of avenues, seeking relief. They requested a hearing before the Redford Township Civil Service Commission, which was subsequently found by the Court of Appeals to lack jurisdiction.[4] They filed grievances and demanded arbitration, claiming that Redford had violated the collective bargaining agreement. Thereafter, they also filed unfair labor practice charges with the MERC claiming that Redford had violated § 10(1)(a) and (c) of the PERA.[5]

The arbitrators ordered the three stewards reinstated. The arbitrator who heard the Moran grievance concluded that Moran did not "call or cause any strike, work stoppage or cessation of employment," and thus did not violate the contractual provision relied on by Redford in terminating his

[4] See *Redford Twp v Redford Twp Civil Service Comm, supra* at 71. The civil service question is not before this Court.

[5] See n 1 for pertinent language of § 10(1)(a). Section 10(1)(c) provides that it is an unfair labor practice to "discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization." MCL 423.210(1)(c); MSA 17.455(10)(1)(c).

employment. "He merely participated in the walk-
out; he did not instigate it . . . ." As for Haney,
the arbitrator who heard her grievance concluded,
"In light of [the contractual provision Haney had
relied on, her] conduct in making employees
knowledgeable of the fact that they would not be
punished for refusing to cross the picket line does
not amount to calling or causing any strike [or]
work stoppage . . . ." The arbitrator added that
"even if [that provision] doesn't apply, the dis-
charge cannot stand," because the proof only
amounts to suspicion. Brown was also ordered
reinstated by the arbitrator who heard his griev-
ance. Brown was found not guilty of calling or
causing a strike. His position the day before the
walkout was found to have "changed by the follow-
ing morning."[6]

In September, after the arbitrators issued their
opinions in the Haney and Moran grievances, but
before the arbitrator issued an opinion on the
Brown grievance, the MERC found that there was
insufficient evidence to conclude that either Moran
or Brown had instigated the work stoppage, but
that there was sufficient evidence to find that they
had assumed a leadership role in the strike as
soon as it began. The MERC said that "it is well
established that a steward or union officer who
instigates, urges participation in, or otherwise as-
sumes a leadership role in an unlawful work stop-
page may lawfully be disciplined more severely
than employees who merely participate in the
work stoppage." The MERC concluded that the
discharges were not prohibited by the PERA. The
discharge of Thelma Haney was, however, found to
violate the PERA, because her actions were not
"sufficiently indicative of a leadership role in the

[6] Haney was reinstated unconditionally. Moran and Brown were
ordered reinstated after thirty-day disciplinary suspensions.

unlawful strike to permit Respondent to single her out for discharge."

The circuit court ordered enforcement of the arbitration awards. In the Court of Appeals, Redford claimed that "(1) once Local 214 filed a charge with the MERC, the MERC obtained exclusive jurisdiction over the issues regarding the termination . . . and . . . (2) the arbitration awards are, in any event, contrary to public policy and should not be enforced." The Court of Appeals concluded that Redford's first argument was based on a misinterpretation of *Detroit Fire Fighters*. It also said that since "the grounds asserted by Redford for vacating the arbitration awards are inadequate, and since Redford has yet to exercise its § 6 rights, the trial court correctly ordered Redford to comply with the arbitration awards.'"[7]

II

In *Detroit Fire Fighters,* this Court, in the context of examining the MERC's policy of deferring "resolution [by the MERC] of statutory unfair labor practice charges to the contract law determinations of a private arbitrator," *id.* at 676, ruled that "once a party to a public sector employment collective bargaining relationship invokes MERC's jurisdiction under PERA, that party's complaint should be resolved by MERC in accordance with the statutory processes." *Id.* at 685.

In the instant cases, different panels of the Court of Appeals reached different conclusions concerning the meaning of *Detroit Fire Fighters.* The *Bay City* panel said that "[t]he opinion announces a policy of broad application which extends far beyond the specific circumstances of that case." The panel read *Detroit Fire Fighters* as

---

[7] *Redford Twp, supra* at 72-74.

holding that whenever "defendants have invoked
MERC's exclusive jurisdiction, . . . any order allow-
ing the matter to be deferred to private arbitration
would run counter to the Legislature's intention in
vesting MERC with such jurisdiction."[8] The "mat-
ter" referred to by the panel seems to include and
render indivisible all claims—statutory or contrac-
tual—arising out of the same controversy.

The *Redford* panel interpreted *Detroit Fire
Fighters* narrowly: "In that case, our Supreme
Court made it clear that, when employment dis-
putes 'implicating statutory rights' are presented
to the MERC, the MERC cannot delegate resolution
of those disputes to arbitrators." The disputes that
could not be deferred and delegated to arbitration
were statutory claims. The panel said that "the
alleged conduct for which these employees were
discharged violates *both* the contractual provisions
of the collective bargaining agreement *and* the
statutory provisions of PERA." (Emphasis in origi-
nal.)[9]

We agree with the *Redford* panel. The filing of
an unfair labor practice claim with the MERC does
not preclude an arbitrator from resolving a breach
of contract claim arising out of the same contro-
versy. *Detroit Fire Fighters* prohibited, rather, the
MERC from deferring the resolution of a statutory
claim to an arbitrator.

III

Where a controversy gives rise to both contrac-
tual and statutory claims in cases within the
jurisdiction of the National Labor Relations Board,

[8] *Bay City, supra* at 731-732.

[9] *Redford Twp, supra* at 72.

grievants have been allowed to pursue different avenues of relief in different fora.[10]

Although the contractual and statutory claims may arise out of the same controversy, they may concern different legal and factual inquiries.[11] Conduct left unprotected by the PERA may be protected by a collective bargaining agreement. The failure of the PERA to protect particular conduct does not mean that the PERA prohibits such conduct. As the United States Court of Appeals for the Fifth Circuit observed, "If the arbiter concludes the discharges were contractually unjustified, the policy of the Labor Act is in no way impinged even though the Board might hold on its record that there was no violation of the Act warranting a reinstatement . . . ." *United Steelworkers v American Int'l Aluminum Corp,* 334 F2d 147, 153 (CA 5, 1964).[12]

---

[10] The United States Supreme Court, in *Smith v Evening News Ass'n,* 371 US 195; 83 S Ct 267; 9 L Ed 2d 246 (1962), said that "the authority of the [National Labor Relations] Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *Id.* at 197. The Court made this ruling in the course of overturning a decision by this Court, which had held that an action for breach of contract was preempted by the National Labor Relations Act.

See also *Carey v Westinghouse,* 375 US 261, 268; 84 S Ct 401; 11 L Ed 2d 320 (1964), and *Teamsters Local 174 v Lucas Flour Co,* 369 US 95, 101, n 9; 82 S Ct 571; 7 L Ed 2d 593 (1962).

[11] See *United Steelworkers of America v American Int'l Aluminum,* 334 F2d 147, 152 (CA 5, 1964), stating it is a "fallacy" to believe that "the Union is seeking to enforce a single right in two forums . . . [because,] [a]ctually, there are quite separate rights involving separate legal and factual issues." See also *Alexander v Gardner-Denver,* 415 US 36, 50; 94 S Ct 1011; 39 L Ed 2d 147 (1974).

[12] The MERC does not exercise jurisdiction of breach of contract claims unless the asserted breach of contract constitutes a complete renunciation of the collective bargaining relationship. See *Parchment Bd of Ed v Kalamazoo Co Ed Ass'n,* 1982 MERC Lab Op 1146, 1154; *Oakland Co v Michigan Police Officers Ass'n,* 1983 MERC Lab Op 538, 542. The MERC has said: "[T]he legislature did not empower this Commission to function as an arbitrator in cases of this nature. Its sole function is to determine whether or not the discharge was for

An arbitrator may have special competence and experience in interpreting a collective bargaining agreement. In all events, the arbitrator chosen by the parties is the person they believed to be the best judge of what their contract means.[13]

## IV

Parallel proceedings in different fora may give rise to conflicting decisions. It is indeed inefficient to have two different factfinders evaluate the same controversy. While different rights are at stake, much of the same evidence is examined and duplication of effort is inevitable.

The NLRB generally avoids duplication of efforts by deferring its resolution of statutory issues until after the arbitrator has rendered a decision. If the arbitration award effectively disposes of the statutory issues as well, the NLRB will ordinarily take no further action. This Court has ruled, however, that the PERA directs that a proceeding relating to an unfair labor practice charge must be conducted

reasons prohibited by PERA." *Genesee Intermediate School Dist v Adams,* 1979 MERC Lab Op 874, 886.

[13] See *United Steelworkers of America v Warrior & Gulf Navigation Co,* 363 US 574, 582; 80 S Ct 1347; 4 L Ed 2d 1409 (1960), stating: "The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. . . . The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance . . . ." See also *Sinclair Refining Co v NLRB,* 306 F2d 569, 577 (CA 5, 1962), quoting *Dowd Box Co v Courtney,* 368 US 502, 513; 82 S Ct 519; 7 L Ed 2d 483 (1962), "While Congress has, of course, presumably infused an expertise in the members of the Labor Board with respect to matters committed to its jurisdiction, . . . it has 'expressly rejected that policy with respect to violations of collective bargaining agreements . . . .' " This Court has noted, "The policy favoring arbitration of disputes arising under collective bargaining agreements, as enunciated by the United States Supreme Court in the Steelworkers' Trilogy, is appropriate for contracts entered into under the PERA." *Kaleva-Norman-Dickson School Dist v K-N-D Teachers' Ass'n,* 393 Mich 583, 591; 227 NW2d 500 (1975).

by the MERC pursuant to Michigan labor law.[14] *Detroit Fire Fighters, supra* at 678. Arbitration procedures have been deemed inadequate for the resolution of statutory rights under the PERA.

Where deference to arbitration is not allowed in the federal context, the courts have not found the burden of duplication of effort to be sufficiently significant to justify the denial of a contractual remedy. In Title VII cases, for example, an employee has been allowed to pursue both his contractual and statutory remedies "in their respectively appropriate forums."[15]

The PERA does not in terms deny employees the right to pursue contractual grievances. We decline to read an implied prohibition into the act on the basis that the production of similar evidence in two separate proceedings will be costly or inefficient.[16] Where the parties contract for the supplementary dispute resolution mechanism provided by the grievance procedure, the state does not bear the burden of the cost or inefficiency of duplicative arbitration proceedings. The parties who contracted for the grievance procedure bear that burden.

The employers, in both *Bay City* and *Redford,* stress the passage in *Detroit Fire Fighters* in which this Court said that there was no basis for attributing to the Legislature an "intent to approve bifurcated proceedings attended with obvious delay and inconvenience." *Detroit Fire Fighters, supra,* at 680. The delay and inconvenience adverted to in this passage concerned statutory

[14] MCL 423.216(a); MSA 17.455(16)(a).

[15] See *Alexander v Gardner-Denver,* n 11 *supra* at 55.

[16] The United States Court of Appeals for the Fifth Circuit has said: "So far as cost or inconvenience of producing like or similar evidence before the arbiter is concerned, no policy defined in the Labor Act affords any immunity to the parties to an arbitration agreement." *United Steelworkers v American Int'l Aluminum, supra* at 152.

rights—rights protected by the PERA—and not contractual rights. Allowing arbitration to proceed simultaneously with an MERC unfair labor practice proceeding will not delay or impede implementation of the statutorily prescribed remedy.

V

While the pendency of MERC proceedings does not generally preclude an arbitrator from providing a remedy for a breach of contract claim arising out of the same controversy, there is, to be sure, the risk of conflicting decisions by the MERC and the arbitrator. This can occur when the contract allows what the PERA prohibits, and when the contract and the PERA protect identical rights and the arbitrator and the MERC make conflicting findings of fact.

Certain activities are neither prohibited nor protected by the PERA.[17] If such activities are protected by contract, there is no conflict with the PERA.[18] The contract cannot, however, protect conduct prohibited by the PERA.[19] The parties do not have the power to legitimate violations of public policy.[20] A contract provision purporting to protect

---

[17] See, generally, *San Diego Bldg Trades Council v Garmon,* 359 US 236, 245; 79 S Ct 773; 3 L Ed 2d 775 (1959) ("[T]he Board may decide that an activity is neither protected nor prohibited" by the NLRA); similarly the PERA, which is "modeled on the National Labor Relations Act." *Rockwell v Crestwood School Dist,* 393 Mich 616, 635-636; 227 NW2d 736 (1975).

[18] See text following n 12.

[19] See *American Int'l Aluminum Corp, supra* at 152 ("If the Board concludes that the discharges were violations of the Act, reinstatement with back pay would follow as a matter of course regardless of the presence or absence of 'justifiable' cause under the contract."). Counsel for Redford acknowledged that a contract cannot be written that supersedes the law.

[20] See *Carey v Westinghouse,* n 10 *supra* at 272 ("should the Board disagree with the arbiter . . . the Board's ruling would, of course, take precedence"). See also Gorman, Labor Law, 733 ("in the event of

activity prohibited by the PERA would not be enforceable, and an arbitration award based on such a provision should not be enforced.[21] The arbitration awards in *Redford* were not premised on contract provisions that violated the PERA.[22]

A conflicting arbitration award will similarly not be enforced when the right being asserted is "identical" to a right that has been adjudicated by the MERC.[23] A right is identical when the "precise

a conflict between an arbitral interpretation of a contract and a Board interpretation of the Labor Act . . . the Board as guarantor of the public interest must prevail"). See, generally, *DAIIE v Gavin*, 416 Mich 407, 434; 331 NW2d 418 (1982), a case involving automobile insurance arbitration in which this Court stated that arbitrators can fairly be said to exceed their power when they act "in contravention of controlling principles of law." The PERA is "the dominant law regulating public employee labor relations." *Rockwell v Crestwood School Dist*, n 17 *supra* at 629.

[21] See n 20.

[22] In *Redford*, the MERC found that one of the contract provisions protected conduct prohibited by the PERA. Article XXI of the contract states: "It shall not be a violation of this Agreement and it shall not be cause for a discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute . . . ." Section 3 of the PERA provides: "No person exercising any authority, supervision or direction over any public employee shall have the power to authorize, approve or consent to a strike by public employees . . . ." The arbitrator who heard Haney's grievance found that the contract provision was an alternative ground for justifying Haney's conduct. The MERC found the contract provision violated § 3. If the arbitrator had relied solely on the contract provision to justify reinstatement, which he did not, and the MERC had found that Haney's conduct violated § 3, which it did not, the arbitrator's decision would probably be overturned as violative of public policy.

[23] See *Senior Accountants v Detroit*, 399 Mich 449; 249 NW2d 121 (1976). *Senior Accountants* held that an unappealed MERC determination operates as a collateral estoppel of a subsequent breach of contract action in circuit court. While *Senior Accountants* addresses a conflict between an MERC and a circuit court determination rather than an MERC and an arbitrator's determination, the principle that underlies the doctrine of collateral estoppel applies with equal force in both cases because the basis of both a circuit court action and grievance arbitration is asserted breach of contract. See Restatement Judgments, 2d, §§ 83, 84.

determinations" necessary to establish protected
conduct in either forum is the same.[24]

### A

The concurring opinion in *Bay City,* stated: "(1)
[t]he issues and remedies which defendants seek to
pursue simultaneously before MERC and the arbi-
trator are identical, and (2) defendants invoked the
jurisdiction of MERC before filing the demand for
arbitration."

Because an arbitrator has not heard or decided
the disputed questions presented by the contrac-
tual grievances in *Bay City,* we are unable to
determine whether the unions were seeking to
enforce identical rights in the MERC and the arbi-
tration proceedings. Among the contractual provi-
sions allegedly violated by the school board are
those banning displacement of employees by non-
unit personnel, subcontracting, negotiating or rec-
ognizing a teacher's organization other than the
union, and interfering with terms and conditions
of employment for adult education teachers. Until
an arbitrator hears the evidence and decides what
the contract means, we do not have an adequate
basis for determining whether rights guaranteed
by the contract are identical to the rights pro-
tected by the PERA.

If the rights ultimately prove to be the same and
the arbitration award conflicts with the MERC deci-
sion, the arbitration award can be overturned. We
believe it best not to anticipate conflict that might
not arise. "When the arbiter's award has been
rendered and perhaps the Labor Board decision
announced, appealed, enforced, or vacated, the
trial Court can see on the basis of facts actually
developed in each of the proceedings—not the
mere allegations of lawyers—whether, and to what

---

[24] *Id.*

extent, there is any real conflict between private arbitration and public labor law enforcement." *Int'l Aluminum Corp, supra* at 152.

B

Even if the rights being enforced are not identical, the two factfinders might disagree concerning the underlying facts. In *Redford,* the contract provision at issue stated: "No employee, Union member or other agent of the Union shall call or cause any strike, work stoppage or cessation of employment . . . ." The parties disagree whether this is essentially identical to the "well established [MERC rule] that a steward or union officer who instigates, urges participation in, or otherwise assumes a leadership role in an unlawful work stoppage may lawfully be disciplined more severely than employees who merely participate in the work stoppage."

An arbitrator found that Moran "carefully avoided directing any employee to leave his job. He did not, as the termination notice accuses, 'call or cause any strike, work stoppage or cessation of employment . . . .' " Brown was also found not to have violated this provision.

A focal point for determining whether the rights being enforced were identical, and even if the rights were not identical, whether the arbitrator and the MERC made conflicting findings of fact, is the MERC's conclusion that "there was no direct evidence, aside from Brown's alleged 'threat' on April 8, that either Moran or Brown was responsible for instigating the work stoppage. We find, however, that the record amply supports the . . . conclusion that Moran and Brown assumed leadership of the strike soon after it began." This passage seems to indicate that there is a difference

between the contractual prohibition against instigation of a strike and a broader statutory prohibition which would also include leadership of the strike once it began. The passage also suggests that the findings of fact do not conflict. Both the MERC and the arbitrators concluded that the union stewards had not instigated the strike. The procedural posture of the instant case, however, makes resolution of whether there were conflicting findings of fact unnecessary.

The MERC proceeding instituted by the unions was directed at whether Redford had violated the PERA, not whether the stewards had violated the act. The MERC finding that Redford had not violated the PERA did not constitute a finding that the unions or the stewards had violated the PERA.

Section 6 of the PERA provides a procedure for determining "whether the provisions of this act have been violated by the public employee."[25] No such proceeding took place. A § 6 hearing is the proper forum for determining whether the stewards' conduct violated the PERA, and therefore

---

[25] Section 6 of the PERA provides:

Notwithstanding the provisions of any other law, any person holding such a position who, by concerted action with others, and without the lawful approval of his superior, wilfully absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his duties for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. In the event of such request the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, in accordance with the law and regulations appropriate to a proceeding to remove the public employee. The proceedings shall be undertaken without unnecessary delay. [MCL 423.206; MSA 17.455(6).]

constituted a violation of public policy that could not be the subject matter of contractual arbitration.

Redford did not rely on the PERA. The discharge notices sent to the stewards contained no reference to the PERA. The stewards were "terminated . . . for activity in violation of Article XII, Section 1 of the Collective Bargaining Agreement . . . ."[26] Redford thus made the asserted contractual violation the sole basis of the discharge.

There is no conflict between the decision of the MERC in finding that Redford did not violate the PERA and the decisions of the arbitrators in finding that the stewards should be reinstated pursuant to the collective bargaining agreement.

## VI

The decision of the Court of Appeals in *Bay City* to preclude arbitration is reversed; the cause is remanded to the circuit court for reinstatement of the summary judgment granted to the union permitting the arbitration proceedings to occur. The decision of the Court of Appeals in *Redford* to enforce the arbitration awards is affirmed.

BRICKLEY, CAVANAGH, and RILEY, JJ., concurred with LEVIN, J.

WILLIAMS, C.J. (*concurring*). I agree with the majority's holding that the pendency of unfair labor practice charges before the MERC does not preclude arbitration of contract claims arising from the same controversy. I agree that there is no conflict requiring decision by this Court in *Bay City* because an arbitrator has not yet heard or decided the disputed questions. I also agree. in *Redford* that the arbitration awards should be affirmed. In *Redford,* however, I disagree with one or more of the majority's observations and would emphasize a somewhat different rationale.

[26] See text preceding n 4.

In *Redford,* the question presented to the fact-finders was whether discharge of the three union stewards was justified, either by the PERA (in the case before the MERC) or by the union contract (in the cases before the arbitrators). Although the arbitrators found that contract language did not validate the discharges, the MERC found the discharges of Brown and Moran were justified under the PERA. This Court must initially decide whether these findings conflict.

Article XII, § 1 of the collective bargaining contract prohibits employees from "calling or causing" a strike. It does not provide for penalties. Neither does it state that only those employees calling or causing a strike may be discharged for strike activity. The arbitrators found that the stewards had not violated this provision of the contract, because they had not called or caused the strike.

In the MERC proceeding, the union argued that the township had committed an unfair labor practice by: 1) engaging in a lockout of the employees, and (2) discriminatorily discharging only the three union stewards on the basis of their union activity. The MERC found that Redford Township had not engaged in a lockout. The commissioner further found that the employees, including the three stewards, had participated in an unlawful strike in violation of the PERA.[1] Public employees who engage in strikes in violation of the PERA may be discharged. *Rockwell v Crestwood School Dist,* 393 Mich 616; 227 NW2d 736 (1975).

Having rejected the union's claim of a lockout, the question before the MERC then became whether the township had committed an unfair labor practice by discharging only the three stewards. The MERC reviewed the applicable law and concluded

---

[1] Specifically I cannot agree with the majority's statement that, "The MERC finding that Redford had not violated the PERA did not constitute a finding that the unions or the stewards had violated the PERA." In my opinion, the findings cannot logically be separated. That a work stoppage occurred on April 9, 1981, is undisputed. A finding

that the stewards could not be subjected to more severe penalties solely on the basis of their status as union stewards, but that employees who instigated or exercised a leadership role in an illegal strike could be selectively discharged. On the facts, the MERC found that Haney had neither instigated the strike nor led the strikers and, therefore, could not be subjected to the harsher penalty. As to Brown and Moran, the MERC found that, although they had not instigated the strike, they had assumed leadership roles once the strike was underway and therefore their selective discharges were justified.

However, I agree with the majority that the arbitrators' findings that the employees did not violate the contract are not inconsistent with the MERC's finding. Both factfinders concluded that the stewards did not instigate (or, in the contract language, "call or cause") the strike. The MERC made a further finding regarding Brown's and Moran's leadership roles that was not at issue before the arbitrators. Since the discharge notices in this case stated specifically that the employees were being discharged for violation of Article XII, § 1 of the collective bargaining contract, the relief ordered by the arbitrators was not in conflict with the MERC decision.

BOYLE, J., concurred with WILLIAMS, C.J.

ARCHER, J., took no part in the decision of this case.

---

that Redford had not locked out the employees compels the conclusion that the work stoppage was a strike. MCL 423.202; MSA 17.455(2) prohibits strikes by public employees. Aside from questions of logic, the MERC decision explicitly stated, "The [hearing referee] concluded on the basis of the record that employees in Respondent's Sanitation and Water Departments engaged in an unlawful strike, within the definition of that term in Section 1 of PERA . . . ." The full commission adopted the findings and conclusions of the referee except for the conclusion regarding Thelma Haney.