*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN AFSCME COUNCIL 25 and
AFFILIATED LOCAL 101,

        Plaintiffs-Appellants,

v

COUNTY OF WAYNE,

        Defendant/Third-Party Plaintiff-
        Appellee,

and

VICTOR PLESA,

        Third-Party Defendant.

UNPUBLISHED
April 21, 2022

No. 356320
Wayne Circuit Court
LC No. 20-007378-CL

MICHIGAN AFSCME COUNCIL 25 and
AFFILIATED LOCAL 101,

        Plaintiffs,

v

COUNTY OF WAYNE,

        Defendant/Third-Party Plaintiff-
        Appellee,

and

VICTOR PLESA,

        Third-Party Defendant-Appellant.

No. 356322
Wayne Circuit Court
LC No. 20-007378-CL

-1-

Before:  JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

In these consolidated appeals, plaintiffs Michigan AFSCME Council 25 and Affiliated Local 101 appeal as of right in Docket No. 356320, and third-party defendant Victor Plesa appeals as of right in Docket No. 356322, all challenging the trial court's order denying plaintiffs' and Plesa's motions for summary disposition to confirm an arbitrator's awards, granting summary disposition in favor of defendant and third-party plaintiff Wayne County pursuant to MCR 2.116(I)(2), and vacating an arbitrator's awards in favor of Plesa on the ground that the arbitrator exceeded his authority in issuing the awards.  We affirm.

## I.  FACTS AND PROCEEDINGS

Plesa applied for retirement while awaiting the outcome of a disciplinary action initiated by defendant arising from a work accident that resulted in an injury to another worker.  His retirement application required him to assent to a "separation waiver," which stated that he was terminating his employment and not seeking reemployment.  Defendant terminated his employment the following day.  Plesa allowed his retirement application to proceed, but he also filed a grievance pursuant to a collective-bargaining agreement (CBA) with defendant, seeking reinstatement of his employment.  In the meantime, the Wayne County Employees' Retirement System ("WCERS") approved Plesa's retirement.  Plesa thereafter transferred his defined contribution retirement account funds to an individual retirement account.

Plesa's grievance proceeded to arbitration.  Defendant argued that Plesa could not be reinstated because he represented in the separation waiver that he was terminating his employment and not seeking reemployment.  Defendant argued that if Plesa was reinstated after he withdrew his retirement account funds, his employment would violate defendant's retirement ordinance and the Internal Revenue Code (IRC), which prohibit actively employed persons from receiving retirement benefits.  Defendant believed that WCERS and its members could be subject to adverse tax consequences as a result of these violations.  The arbitrator found that defendant violated the CBA's just-cause termination provision when it terminated Plesa's employment, and that suspension, not termination, was the appropriate disciplinary action.  The arbitrator disagreed with defendant's argument that Plesa's retirement application precluded his reinstatement.  Accordingly, the arbitrator issued an award that reduced Plesa's discipline from termination to suspension, reinstated Plesa's employment, and required defendant to pay him backpay.  The arbitrator later issued a second award clarifying issues regarding the dates of the suspension and backpay.

Plaintiffs filed this action to enforce the arbitration awards.  Defendant filed a counterclaim against plaintiffs and a third-party claim against Plesa for vacation of the arbitration awards and to recover compensation for improperly awarded backpay.  Plaintiffs and Plesa moved for summary disposition, and defendant moved for summary disposition in its favor.  The trial court concluded that the arbitrator exceeded his authority by ordering Plesa's reinstatement contrary to Plesa's separation waiver, and therefore vacated the arbitration awards.  Plaintiffs and Plesa objected to a

-2-

proposed order submitted by defendant, and also to defendant's amended proposed judgment. The trial court signed defendant's first proposed order without holding a hearing on plaintiffs' objections. This appeal followed.

## II. DEFENDANT'S STANDING TO ASSERT SEPARATION WAIVER

Preliminarily, plaintiffs and Plesa argue that defendant lacked standing to assert the separation waiver as grounds for establishing that the arbitrator lacked authority to reinstate Plesa. We disagree.

"The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010). "Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. "[S]tanding refers to the right of a party plaintiff *initially* to invoke the power of the court to adjudicate a claimed injury in fact. . . ." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). "A litigant may have standing . . . if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . . ." *Lansing Sch Ed Ass'n*, 487 Mich at 372.

Defendant argues that it has standing to enforce retirement terms that arise from the CBA and retirement ordinance. Defendant emphasizes that WCERS is the administrator of retirement plans for defendant's employees. Defendant asserts that the retirement application form and its contents were implemented to enforce defendant's contractual rights and obligations. We agree that defendant has a legitimate interest in ensuring that it is not employing persons who are ineligible for active employment. The CBA, the retirement ordinance, and the WCERS rules operate jointly in governing members' rights and obligations. Article 30 of the CBA incorporates by reference defendant's retirement ordinance, which delegates plan administration to WCERS, pursuant to MCL 46.12a(12). The employment relationship between defendant and its employees thus involves rights and obligations that overlap with the contractual relationship between WCERS and its members. If, as defendant contends, WCERS members who receive retirement benefits are ineligible for active employment, defendant has an interest in avoiding employment of ineligible retirees.

Therefore, defendant had standing to raise the issue that Plesa's retirement agreement precluded his reinstatement. Because general principles of standing permit defendant to raise this issue, it is not necessary to address defendant's alternative argument that it has standing as a third-party beneficiary of WCERS's contract with Plesa.

## III. TRIAL COURT'S REVIEW OF ARBITRATION AWARDS

Plaintiffs and Plesa also argue that the trial court erred by ruling that Plesa's retirement application and withdrawal of his retirement funds precluded him from receiving reinstatement and backpay. We disagree.

Plaintiffs and Plesa sought to enforce the arbitration awards in motions for summary disposition under MCR 2.116(C)(10). In response, defendant sought judgment in its favor under MCR 2.116(I)(2). A trial court's decision on a motion for summary disposition is reviewed de

novo. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac*, 309 Mich App 611, 617; 873 NW2d 783 (2015). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotation marks and citation omitted). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). When deciding a motion for summary disposition, "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

"This Court reviews de novo a circuit court's decision whether to vacate an arbitration award." *TSP Servs, Inc v Nat'l-Standard, LLC*, 329 Mich App 615, 619-620; 944 NW2d 148 (2019). "Judicial review of an arbitrator's decision is narrowly circumscribed." *City of Ann Arbor v AFSCME Local* 369, 284 Mich App 126, 144; 771 NW2d 843 (2009). "A court may not review an arbitrator's factual findings or decision on the merits. Likewise, a reviewing court cannot engage in contract interpretation, which is an issue for the arbitrator to determine. Nor may a court substitute its judgment for that of the arbitrator." *Id*. (citations omitted). But a court may review whether an arbitrator acted within the scope of his or her authority. *36th Dist Court v Mich AFSCME Council 25, Local 917*, 295 Mich App 502, 508-509; 815 NW2d 494 (2012), rev'd in part on other grounds 493 Mich 879 (2012).

Preliminarily, the parties dispute the scope of the trial court's authority to review an arbitration award, specifically with respect to the arbitrator's interpretation of the CBA. Defendant argues that the principles enunciated in *Detroit Auto Inter-Ins Exch v Gavin*, 416 Mich 407; 331 NW2d 418 (1982), also apply to arbitrations in labor disputes. *Gavin* involved an arbitration conducted pursuant to an arbitration clause in an insurance policy. The arbitration agreement provided for statutory arbitration governed by MCL 600.5001 *et seq*., repealed by 2012 PA 370.[1] The issue in *Gavin* was whether the arbitrator erred by finding that four automobile no-fault insurance policies could be stacked to allow the injured insured party to receive the maximum benefit under all four policies, contrary to antistacking provisions in the policies. *Id*. at 415. Our Supreme Court framed the inquiry as whether an arbitrator's plainly erroneous contractual interpretation was subject to correction by the courts. *Id*. at 425. The Court declared itself "not ready to assume that the parties in these cases agreed to forego observance of a plainly applicable provision of their written contract, one which is dispositive of the only matter genuinely in dispute between them, in exchange for a speedy, thrifty, and final resolution of their differences in a way which disregards the law substantially determinative of their rights and duties." *Id*. at 427. The Court held:

> [I]n discharging their duty, arbitrators can fairly be said to exceed their power whenever they act beyond the material terms of the contract from which they

---

[1] Statutory arbitration is presently governed by the Michigan Uniform Arbitration Act, MCL 761.1681 *et seq*.

-4-

primarily draw their authority, or in contravention of controlling principles of law. [*Id*. at 434.]

The Court further stated:

> The character or seriousness of an error of law which will invite judicial action to vacate an arbitration award under the formula we announce today must be error so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise. [*Id*. at 443.]

The Court noted that "the validity of the express contract terms was essentially a legal question." *Id*. at 444. The Court remarked that although arbitrators are primarily "concerned with factfinding," they also decide legal questions. *Id*. But "just as a judge exceeds his power when he decides a case contrary to controlling principle of law, so does an arbitrator." *Id*. The Court concluded "that in disregarding the anti-stacking provisions of the 'other insurance' clause of the contract from which, in part, they derived their powers, the arbitrators in both cases committed errors of law so substantial that, but for such errors, the awards must have been substantially different." *Id*. at 445.

Plaintiffs and Plesa argue that *Gavin* applies only to statutory arbitration and has no relevance to public-sector labor arbitration. In *Roseville Community Sch Dist v Roseville Federation of Teachers*, 137 Mich App 118, 122; 357 NW2d 829 (1984), this Court observed that the analysis in *Gavin* had "a complete lack of reference to cases involving collective bargaining or traditional labor arbitration." This Court found "no language in *Gavin* which indicates either a departure from the existing standard of judicial review of a labor arbitration award or an intent to broaden its scope." *Id*. This Court concluded that in the trial court decision it reviewed, the trial court "did not err in applying the standard delineated in *Ferndale*,"[2] i.e., "that the award drew its essence from the contract and that the award was within the authority of the arbitrator," "rather than the standard of judicial review set forth in *Gavin*." *Roseville Community Sch*, 137 Mich App at 123-124. However, because *Roseville Community Sch* was decided before November 1, 1990, it is not binding on this Court. MCR 7.215(J)(1).

Further, after *Roseville Community Sch* was decided, in *Bay City Sch Dist v Bay City Ed Ass'n*, 425 Mich 426, 440 n 20; 390 NW2d 159 (1986), which involved a labor arbitration pursuant to a CBA, our Supreme Court quoted *Gavin* for the principle that "arbitrators can fairly be said to exceed their power when they act 'in contravention of controlling principles of law.' " The Court held that a CBA provision "purporting to protect activity prohibited by the [Public Employment Relations Act, MCL 423.201 *et seq*.] would not be enforceable, and an arbitration award based on such a provision should not be enforced." *Id*. at 440-441.

In *36th Dist Court*, 295 Mich App at 508, this Court stated that "[l]abor arbitration falls within the realm of the common law . . . where judicial review of an arbitration is limited . . . ." (Citations omitted.) In the same decision, however, this Court cited *Gavin* without exception for

---

[2] *Ferndale Ed Ass'n v Sch Dist for the City of Ferndale #1*, 67 Mich App 637; 242 NW2d 478 (1976).

the principle that "[a] court may also review an arbitrator's award for an error of law that clearly appears on the face of the award or in the reasons stated by the arbitrator for the decision." *Id*. at 509. In *36th Dist Court*, we ruled that the arbitrator exceeded his authority "by requiring the chief judge to reappoint the grievants to their former positions" contrary to the CBA, which did not "abrogate the chief judge's authority to appoint or reappoint court officers," but instead "affirmatively provides that the arbitrator cannot, through his award, require the employer to relinquish any responsibility that by state law or the constitution cannot be relinquished . . . ." *Id*. at 528. This Court therefore vacated the trial court's order in part and remanded to that court for it to modify its summary disposition order in accordance with this Court's judgment. *Id*. Our Supreme Court reversed the portion of this Court's judgment "that reversed the arbitrator's award of reinstatement and back pay for the grievants," concluding that the arbitrator's decision was correct because "MCR 3.106(C) does not preclude relief where the collective bargaining agreement imposes a just cause standard for termination." *36th Dist Court v Mich AFSCME Council 25, Local 917*, 493 Mich 879; 821 NW2d 786 (2012). In sum, this Court vacated the arbitration award on the ground that the arbitrator exceeded his authority by erroneously deciding a question of law involving the interplay between the CBA and a court rule and, although our Supreme Court concluded that this Court erred in its legal analysis of the issue, it did not comment on this Court's application of the *Gavin* standard.

Our Supreme Court's decisions in *36th Dist Court* and *Bay City Sch Dist* tacitly apply the *Gavin* standard to labor arbitrations, at least to the extent that courts are permitted to vacate an arbitration award that violates applicable law, or that enforces an interpretation of a CBA that is contrary to controlling legal principles. Plaintiffs and Plesa overstate the extent to which *Gavin* deviates from traditional principles of labor arbitration review. The *Gavin* principles are consistent with the general rule in labor arbitration that arbitration awards are enforceable unless the arbitrator exceeds his authority. "The inquiry for the reviewing court is merely whether the award was beyond the contractual authority of the arbitrator." *Ann Arbor*, 284 Mich App at 144. Interpretation of a contract in a manner that conflicts with controlling law can be said be outside the arbitrator's authority. Additionally, it is well-established that "a court may refuse to enforce an arbitrator's decision when it is contrary to public policy." *Gogebic Med Care Facility v AFSCME Local 992, AFL-CIO*, 209 Mich App 693, 697; 531 NW2d 728 (1995). These standards contemplate that unlawful provisions in CBAs or obvious misinterpretations of CBAs cannot be enforced under the guise of judicial deference to an arbitrator's authority. See also *Sheriff of Lenawee Co v Police Officers Labor Council*, 239 Mich App 111, 119-120; 607 NW2d 742 (1999) (vacating an arbitrator's award because "he disregarded an express provision of the collective bargaining agreement that mandates discharge when an employee knowingly makes a false statement on an official document").

In view of these principles, we turn to whether the arbitrator exceeded his authority by reinstating Plesa's employment after Plesa represented to WCERS that he was submitting a bona fide separation from employment, and after WCERS approved his retirement and allowed him to withdraw funds from his retirement account. We must determine whether the arbitrator's decision was arguably within the confines of the CBA, not contrary to established law and public policy, and drew its essence from the CBA. Defendant argues that the trial court properly vacated the arbitration awards because Plesa's representation of a bona fide separation from his employment precluded his reinstatement, and the arbitrator was not permitted to construe the CBA in disregard

of the separation waiver, defendant's retirement ordinance, and IRC regulations. We agree with the defendant County of Wayne.

The CBA required all employees to "participate in a retirement savings plan as offered by Wayne County." The CBA also provided that the provisions of the retirement ordinance controlled unless the CBA changed or amended them. The provisions of the retirement ordinance pertained to Defined Contribution Plan #4, of which Plesa was a member. Section 141-9 of the retirement ordinance required the applicant to satisfy three requirements, including submission of a "written application for normal retirement, in the form prescribed by the retirement system" 30 to 90 days before commencement of retirement, and termination of membership. Section 141-42(a) provided that "[t]he retirement system is intended and has been administered to be a qualified pension plan under 401 of the Internal Revenue Code, as amended . . . ." The Defined Contribution Plan, Article XIII, prohibited in-service withdrawals ("no Member or Participant who is employed by an Employer shall be eligible to withdraw any portion of his Account under the Plan"). The CBA incorporated the retirement ordinance, which prohibited in-service withdrawals from a retirement account. The retirement ordinance incorporated the WCERS application process, which included the separation waiver. The separation waiver, which Plesa executed, provided: "You are terminating employment and do not have any agreement, offer, or promise, oral or written, concerning reemployment."

Plaintiffs and Plesa argue that the separation waiver cannot be construed as a promise that the applicant forecloses future employment. They argue that the grievance process is not an "agreement, offer, or promise . . . concerning reemployment." They emphasize that the waiver makes no reference to reinstatement of employment as a remedy for an employer's violation of the just-cause provision in the CBA. We partially agree.

The arbitrator found that Plesa was not attempting to simultaneously retire and maintain his employment because he would not have completed the retirement process if defendant had not wrongfully discharged him or if the grievance was resolved favorably before his retirement application was accepted. Retirement was his contingency plan if he was not reinstated. The CBA, the retirement ordinance, and the retirement application forms do not expressly prohibit an employee in Plesa's circumstances from pursuing this strategy. However, by acceding to the separation waiver, Plesa represented that he was presently and voluntarily terminating his employment. The waiver states: "*You are* terminating employment and do not have any agreement, offer, or promise, oral or written, concerning reemployment." The word "you" indicated that Plesa was making the decision, and the present-tense verb "are" indicated that he was presently making the decision at that moment. Plaintiffs and Plesa argue that the phrase "not have any agreement, offer, or promise" is not inconsistent with seeking reinstatement of employment through the grievance process, but this argument fails to acknowledge that the separation waiver stated that the applicant was fulfilling two conditions: (1) present termination of employment, *and* (2) disclaimer of seeking reemployment. Assuming that Plesa's invocation of the grievance process did not negate the reemployment disclaimer, Plesa still misrepresented his intentions in the first part of the disclaimer where he affirmatively terminated his employment.

The arbitrator concluded that Plesa should be reinstated notwithstanding his representation of voluntary termination because he would not have initiated retirement if defendant had not wrongfully terminated him. The arbitrator found that reinstatement was necessary to fashion a

make-whole remedy. The flaw in this analysis is that reinstating Plesa after he withdrew his retirement account funds did not restore him to his prior employed status because active employees in a defined contribution plan do not have free access to funds in their retirement account. Plesa withdrew 100 percent of the funds. The arbitrator's finding that Plesa would no longer receive a retirement allowance fails to acknowledge that Plesa did not receive an "allowance," but the entire account. Although the separation waiver did not specifically preclude future employment with defendant after a good-faith separation of employment, Plesa's plan to retire, withdraw his retirement account funds, pursue reinstatement, and retain the retirement funds regardless of reinstatement negated his representation that he was presently separating from employment.

The joint authorities of the CBA, retirement ordinance, and WCERS application procedures precluded Plesa's employment after Plesa represented that he was terminating his employment and obtained a full distribution of his retirement funds. Plesa attempted to make a conditional retirement that could be revoked in the event of reinstatement, but the bona fide separation waiver and prohibition against in-service distributions did not permit a conditional separation and revocation, at least not after withdrawal of the retirement account funds. Accordingly, we affirm the trial court's judgment vacating the arbitration awards because the awards were not permissible under controlling law.

IV. OBJECTIONS TO PROPOSED ORDER

Plaintiffs and Plesa argue that the trial court did not comply with proper procedures when entering its final order. The trial court approved the first of two proposed orders submitted by defendant. Issues involving the interpretation and application of court rules are reviewed de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

MCR 2.602 provides, in pertinent part:

**(B) Procedure of Entry of Judgments and Orders.** An order or judgment shall be entered by one of the following methods:

(1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.

(2) The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision.

(3) Each judgment must state, immediately preceding the judge's signature, whether it resolves the last pending claim and closes the case. Such a statement must also appear on any other order that disposes of the last pending claim and closes the case.

(a) If no written objections are filed within 7 days of the date of service of the notice, the judge shall sign the judgment or order if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.

(b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.

(c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

(d) The court must schedule the hearing upon filing of the first objection, and the party filing the objection must serve the notice of hearing under subrule (B)(3)(c). Other parties to the action may file objections with the court through the end of the 7-day period. The court must schedule a hearing for all objections within 14 days after the first objection is filed or as soon as is practical afterward.

(4) A party may prepare a proposed judgment or order and notice it for settlement before the court. Pursuant to MCR 2.119(G)(3)(b), a motion fee may not be charged.

Plaintiffs and Plesa objected to defendant's first proposed order on the ground that the trial court did not state on the record that the arbitrator exceeded his authority by failing to enforce the terms of the separation disclaimer and issued awards that violated IRS regulations and other applicable law. Although the trial court did not specifically refer to the IRS regulations, it stated that it was "siding with the County" because it believed "that the arbitrator made a series of mistakes or misjudgments that went outside of his authority and that they were material and both contrary and contrary to the law." Thus, the trial court implicitly agreed with defendant's arguments about the IRS regulations in its oral ruling. Accordingly, the order is not inconsistent with the trial court's ruling. To the extent that proper procedures were not followed before the order was entered, because plaintiffs and Plesa have not demonstrated that the trial court's order did not comport with its ruling, any error is harmless. See MCR 2.613(A) ("An error . . . or defect in anything done or omitted by the court or by the parties is not ground for . . . for setting aside . . . or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

Finally, plaintiffs and Plesa have not demonstrated that Plesa has been required to pay any damages not authorized by the trial court's final order. Although plaintiffs and Plesa argue that defendant's second proposed judgment improperly sought recovery of items totaling $43,976.91, the trial court did not enter that judgment. Contrary to what plaintiffs and Plesa assert, the trial court's final judgment did not award defendant $43,976.91. Further, although plaintiffs and Plesa assert that defendant has pursued collection efforts in an attempt to collect damages in excess of the trial court's judgment, defendant's collection efforts involve postjudgment matters that are beyond the scope of this appeal. In any event, plaintiffs and Plesa do not contend that defendant has been successful in recovering any amounts not authorized by the trial court's final order. Accordingly, plaintiffs and Plesa are not entitled to any relief with respect to this issue at this time.

## V. CONCLUSION

The trial court properly vacated the arbitration awards.  We affirm.


/s/ David H. Sawyer
/s/ Michael J. Riordan